**COMMONWEALTH of Pennsylvania,
Appellee,**

v.

**Jamar JOHNSON, Appellant.**

Superior Court of Pennsylvania.

Argued May 18, 2006.
Filed Sept. 26, 2006.
Reargument Denied Nov. 30, 2006.

William P. Wismer, Media, for appellant.

William R. Toal, III, Asst. Dist. Atty., Media, for Com., appellee.

BEFORE: JOYCE, LALLY–GREEN, JJ., and McEWEN, P.J.E.

OPINION PER CURIAM:

¶ 1 Appellant, Jamar Johnson, appeals from the judgment of sentence to serve an aggregate term of imprisonment of from twenty-two years to forty-nine years, imposed after a jury found him guilty of attempted murder, aggravated assault, recklessly endangering another person, intimidation of a witness, retaliation against a witness, and unlawful possession of a firearm. We affirm in part, vacate in part, and remand for a new sentencing hearing.

¶ 2 The factual background of this appeal commenced on January 14, 2003, when the victim in the present case, Shanté Powell, testified on behalf of the Commonwealth at a preliminary hearing for appellant's brother, Raheem Johnson, upon the charges of murder in the first degree. Co-defendant Omar Horsey, an acquaintance of both Raheem Johnson and appellant, was also present at the preliminary hearing.

¶ 3 Three weeks after her testimony at the preliminary hearing, Shanté, who was staying with her sister, Monica Powell, at Monica's apartment on Renshaw Road in Chester, walked with her sister, in the early morning hours of February 3, 2003, from the apartment to a gas station convenience market on the northeast corner of Renshaw and Township Line Roads to purchase snacks. When Shanté and Moni-ca were returning home, appellant rose up from behind a set of bushes along the sidewalk four to five feet in front of them. Shanté and Monica immediately recognized appellant, although he had pulled the hood of his sweatshirt tightly around his chin and forehead in an attempt to conceal his face. Appellant pointed a handgun at Shanté's head and fired, but did not strike her. Shanté turned and ran across Township Line Road back toward the gas station. Monica, before fleeing across Renshaw Road, saw a second male rise from the bushes and fire a handgun at her sister. Appellant pursued Shanté into Township Line Road and fired several more rounds at her. Two shots hit the door of the convenience store. One round, however, struck Shanté in the heel of her foot. Appellant and his accomplice then retreated back toward Renshaw Road and disappeared down an alleyway.

¶ 4 Shanté limped back to the gas station and managed to enlist the aid of Darrin Crawford, a customer who had heard the shots from his location at the gas station. Mr. Crawford drove Shanté and her sister to Crozer–Chester Medical Center. Both sisters testified that, after the shooting and en route to the hospital, they discussed the identities of the shooters: Shanté told Monica that it was appellant who had attacked her, while Monica identified appellant and co-defendant Horsey as participants in the ambush. The trio arrived at Crozer–Chester Medical Center around 2:05 a.m., where Shanté was admitted for several hours for treatment for the bullet lodged in her foot.

¶ 5 Chester City police arrived on the scene of the shooting shortly after 2:00 a.m. and recovered eleven shell casings from around the southeast corner of Renshaw and Township Line Roads and three bullet fragments from inside the conven-

ience store. Several officers also proceeded to Crozer–Chester Medical Center and interviewed Monica, who identified appellant by name, described him as a six-foot to six-foot, two-inch, light-skinned African American male weighing one hundred and seventy to eighty pounds. The police also interviewed Shanté and presented her with a book of photographs, from which she identified appellant. After Shanté was discharged from the medical center at 9:15 a.m., she and her sister went to the Chester City police station, where, in separate rooms, they each identified appellant and co-defendant from among photographs contained in photograph books.

¶ 6 On the following day, February 4, 2003, Sergeant Darren Alston of the Chester City police responded to a report that patrol officers had located appellant. Sergeant Alston arrived on the scene at approximately 8:00 p.m. and observed appellant standing and leaning into the driver's side window of a blue Oldsmobile, with marked police patrol vehicles positioned in front of, and behind, the Oldsmobile. When officers then approached appellant on foot, appellant began to back away from the Oldsmobile. Sergeant Alston, who was behind appellant, ordered him to move away from the vehicle and get on the ground, but appellant fled the scene and discarded a jar before stopping three blocks away. Sergeant Alston, who pursued appellant on foot, took him into custody and, as he proceeded back to his vehicle, recovered the jar, which contained marijuana.

¶ 7 Appellant was taken to the Chester Police station, and, as his *Miranda* warnings were being recited, he stated, "I was at home." Appellant was charged with attempted murder, aggravated assault, recklessly endangering another person, intimidation of a witness, retaliation against a witness, unlawful possession of a firearm,

and conspiracy. The following year, on April 5, 2004, the trial court held a hearing on motions *in limine* and denied appellant's motion to exclude evidence of his flight from police at the time of his arrest. After a jury, on April 16, 2004, found appellant guilty of attempted murder, aggravated assault, recklessly endangering another person, intimidation of a witness, retaliation against a witness, and unlawful possession of a firearm, the trial court, on September 8, 2004, imposed an aggregate sentence of imprisonment of from twenty-two years to forty-nine years, which included a term of imprisonment of from seventeen and one-half years to forty years on the charge of attempted murder. Post-sentence motions were denied, and this appeal followed.

¶ 8 Appellant, in the brief filed in support of this appeal, raises the following questions for review:

Whether the trial court committed error and abuse of discretion in denying appellant a new trial because the verdict, based as it was solely on an identification of appellant that was, under the circumstances, impossible?

Whether the verdicts of guilty were supported by sufficient evidence?

Whether the trial court committed error and abuse of discretion in admitting evidence of appellant's flight, where the evidence failed to show appellant fled for fear of apprehension for the shooting in the within matter?

Whether the sentence of seventeen and one-half years to forty years imprisonment imposed for the crime of attempted murder was illegal, where there was insufficient evidence that the victim suffered serious bodily injury?

¶ 9 Appellant first argues that the verdict was against the weight of the evidence because (1) the testimony of Shanté Powell and her sister identifying appellant

as the shooter was not credible, since both "had but seconds to see partially covered faces" that were in constant motion, and (2) their testimony varied to such a degree as to render it unworthy of belief. Brief for Appellant, 24. For this Court to reverse the jury's verdict on weight of the evidence grounds, we must determine that the verdict is so contrary to the evidence as to "shock one's sense of justice." *Commonwealth v. Spotz*, 552 Pa. 499, 507, 716 A.2d 580, 583 (1998), *cert. denied*, 526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed.2d 551 (1999); *Commonwealth v. Lloyd*, 878 A.2d 867, 872 (Pa.Super.2005), *appeal denied*, 585 Pa. 687, 887 A.2d 1240 (2005). Our standard governing review of a weight of the evidence claim is well-settled.

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Widmer*, 560 Pa. 308, 321–322, 744 A.2d 745, 753 (2000) (citations omitted); *see also: Commonwealth v. Tharp*, 574 Pa. 202, 217–218, 830 A.2d 519, 528 (2003), *cert. denied*, 541 U.S. 1045, 124 S.Ct. 2161, 158 L.Ed.2d 736 (2004).

¶ 10 The record in this case reveals that Shanté Powell and her sister, Monica, had been familiar with appellant by appearance, and by name, for several years prior to this incident, and that both had an opportunity to observe appellant at a close range of four to five feet, in an area that was relatively well illuminated by the surrounding street lamps and the lights from the gas station. Ms. Powell and her sister immediately recognized appellant, identified him as their assailant, and selected his photograph from among picture books. Moreover, the testimony of Ms. Powell and her sister as to these essential facts underlying their identification of appellant were substantially similar. The jury obviously accepted the testimony of Ms. Powell and her sister, and this Court discerns no basis upon which to conclude that the trial court erred [1] or abused its discretion in denying appellant's request for a new trial based on the weight of the evidence identifying

1. Appellant's reliance on the decision of this Court in *Commonwealth v. Dickerson*, 757 A.2d 404 (Pa.Super.2000), is unavailing. In *Dickerson, supra*, this Court affirmed the grant of a new trial by the trial court, which, following a bench trial, reconsidered and reversed its own determination that the victim's identification of the robber was credible. The trial judge, in reconsidering his determination, noted (1) that the robbery lasted only thirty seconds, (2) that the victim described the 260–pound defendant as "slim," (3) that despite the victim's close proximity to defendant, the victim failed to mention that defendant was intoxicated, and (4) that the in-court identification of defendant by the victim at the preliminary hearing was tainted by suggestiveness, because immediately prior to the hearing, the victim inadvertently viewed a single photograph of defendant in the prosecutor's file. *Id.* at 406.

In the present case, however, Ms. Shanté Powell had known appellant prior to the incident, identified appellant by name and appearance, and selected his picture from among other photographs. This identification, moreover, was corroborated by Ms. Powell's sister, Monica, through substantially similar testimony. Therefore, *Dickerson, supra*, does not support the argument here that a new trial should be granted.

appellant as a shooter. In essence, this argument is absolutely meritless.

¶ 11 Appellant next challenges the sufficiency of the evidence. Our standard of review when faced with a sufficiency of the evidence challenge is well established:

A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt.... When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Widmer, supra,* 560 Pa. at 319, 744 A.2d at 751 (citations omitted).

¶ 12 As is clear from the above stated standard, a sufficiency of the evidence challenge is directed to the adequacy of the evidence as to the elements of the offenses of which a defendant has been convicted. Appellant, however, does not direct his challenge to the individual elements,[2] and essentially concedes that, if the Commonwealth's witnesses were credible, the Commonwealth's evidence was sufficient. The law is well settled that a sufficiency argument that is founded upon a mere disagreement with the credibility determinations made by the fact finder, or discrepancies in the accounts of the witnesses, does not warrant the grant of appellate relief, for "[i]t is within the province of the fact finder to determine the weight to be accorded each witness's testimony and to believe all, part, or none of the evidence introduced at trial. *Commonwealth v. Randall,* 758 A.2d 669, 674 (Pa.Super.2000), *appeal denied,* 564 Pa. 707, 764 A.2d 1067 (2000) (citing *Commonwealth v. Molinaro,* 429 Pa.Super. 29, 631 A.2d 1040, 1042 (1993)). Moreover, since this Court must review the evidence in the light most favorable to the verdict winner, the record clearly demonstrates that the Commonwealth presented sufficient evidence linking appellant to the crimes.[3] Therefore, we detect no basis upon which to grant appellant relief on this issue.

¶ 13 Appellant, in his third contention, claims that the trial court erred in admitting evidence that appellant fled from the arresting officer, Sergeant Alston. Appellant contends that the evidence of flight should not have been admitted because it forced him to present evidence of a bad act, namely, possession of marijuana, to rebut the inference that he fled out of a fear of apprehension for the shooting. As the admission of evidence is reserved to the sound discretion of the trial court, the standard governing our review of this claim is whether the trial court abused its discretion in permitting the admission of the challenged evidence. *Commonwealth v. Lukowich,* 875 A.2d 1169, 1171 (Pa.Super.2005), *appeal denied,* 584 Pa. 706, 885 A.2d 41 (2005). Evidence is admissible if it is probative of a material fact and the prejudicial effect of admission does not outweigh its probative value. Pa.R.E. 401–403. Moreover, "where evidence exists that a defendant committed a crime, knew he was wanted,

---

2. An examination of the record makes abundantly clear that a sufficiency challenge to the elements of the crimes of which appellant has been convicted would, in any event, have been meritless.

3. The evidence presented by the Commonwealth, as summarized above in our disposition of appellant's weight of the evidence challenge, amply demonstrated the witnesses' ability to see the commission of the crime, and provided a reliable basis for their identification of appellant as the perpetrator.

and fled or concealed himself, such evidence is admissible to establish consciousness of guilt." *Id.* at 1173 (citing *Commonwealth v. Johnson,* 576 Pa. 23, 53, 838 A.2d 663, 681 (2003), *cert. denied,* 543 U.S. 1008, 125 S.Ct. 617, 160 L.Ed.2d 471 (2004)).

¶ 14 The trial court thoroughly considered appellant's arguments following a hearing upon his motion *in limine.* In reviewing this determination it bears remarking that (1) evidence of flight is generally admissible to support an inference of consciousness of guilt, (2) appellant's challenge goes to the weight rather than the admissibility of the evidence, (3) the prejudicial effect of raising the alternative inference that appellant fled because he was in possession of a small jar of marijuana was minimal given the attenuated connections between the act of possessing marijuana and the attempted murder, and (4) the trial court issued carefully drawn instructions after the evidence was admitted, and when charging the jury. *See: Commonwealth v. Rough,* 275 Pa.Super. 50, 418 A.2d 605, 611 (1980). Accordingly, we find no basis upon which to conclude that the trial judge erred in her decision to permit the admission of the Commonwealth's evidence on this point.

4. The trial court imposed an aggregate sentence of imprisonment of from twenty-two years to forty-nine years, that was comprised of the following sentences:

   (1) a term of imprisonment of from seventeen and one-half years to forty years for the charge of attempted murder.
   (2) a consecutive term of imprisonment of from one year to two years for the charge of recklessly endangering another person.
   (3) a consecutive term of imprisonment of from three years to six years for the charge of intimidation of a witness.
   (4) a term of imprisonment of from three and one half years to seven years for the charge of retaliation against a witness,

¶ 15 Appellant in his final challenge argues that the sentence imposed by the trial court upon the conviction for attempted murder, specifically, seventeen and one-half years to forty years imprisonment,[4] was illegal for the reason that the maximum sentence of imprisonment for attempted murder under the facts of this case was twenty years.[5] Appellant, for this argument, relies upon section 1102(c) of the Pennsylvania Crimes Code, which sets forth the sentence applicable to a conviction of attempted murder, namely:

> [A] person who has been convicted of attempt ... to commit murder ... *where serious bodily injury results* may be sentenced to a term of imprisonment which shall be fixed by the court at not more than 40 years. Where serious bodily injury does not result, the person may be sentenced to a term of imprisonment which shall be fixed by the court at not more than 20 years.

18 Pa.C.S. § 1102(c) (emphasis supplied). Thus, the statute imposes a condition precedent to the imposition of a maximum term of imprisonment of up to forty years, specifically, that "serious bodily injury" must have resulted from the attempted murder. Otherwise, the sentence shall be not more than twenty years.

   to run consecutive to items (1) and (2) but concurrent with item (3).

5. The scope and standard of review applied to determine the legality of a sentence are well established.

   If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. An illegal sentence must be vacated. In evaluating a trial court's application of a statute, our standard of review is plenary and is limited to determining whether the trial court committed an error of law.
   *Commonwealth v. Stevenson,* 850 A.2d 1268, 1271 (Pa.Super.2004) (internal quotations and citations omitted).

¶ 16 Appellant argues that the seventeen and one-half year to forty year sentence imposed on the conviction for attempted murder was illegal because there was not sufficient evidence to support a finding of "serious bodily injury" as that term is defined by the Crimes Code.[6] The trial court, reasoned that "serious bodily harm" had been established when the jury found appellant guilty of the companion offense of aggravated assault. Although we agree with appellant that the sentence is illegal, we do so on a basis other than that presented by appellant,[7] and here hold that under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), it was not the prerogative of the trial court, but solely the responsibility of the jury in this case to find, beyond a reasonable doubt, whether a serious bodily injury resulted from the instant attempted murder.

¶ 17 The United States Supreme Court in *Apprendi, supra,* held:

Other than the fact of prior conviction, any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. With that exception, we endorse the statement of the rule set forth in the concurring opinions in that case *[Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999) ]: "It is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt."

*Id.* at 490, 120 S.Ct. at 2362–2363, 147 L.Ed.2d at 455. The decision in *Apprendi, supra,* confirms the principle that it is within the sole province of the jury to find those facts necessary to increase the maximum terms of imprisonment for a specific charge beyond a reasonable doubt.[8] Here, however, (1) appellant was not charged with attempted murder resulting in serious bodily injury, (2) appellant was not on notice that the Commonwealth sought either to prove that a serious bodily injury resulted from the attempted murder or to invoke the greater maximum sentence, and (3) the jury was never presented with, nor rendered a decision on, the question of whether a serious bodily injury resulted from the attempted murder.[9] Thus, the

6. "Serious bodily injury" is defined in the Crimes Code as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of a bodily member or organ." 18 Pa.C.S. § 2301.

7. Since this Court may inquire *sua sponte* into the legality of a sentence, *Commonwealth v. Vasquez*, 560 Pa. 381, 387, 744 A.2d 1280, 1284 (2000); *Commonwealth v. Archer*, 722 A.2d 203, 209 (Pa.Super.1998), we may review the sentence at issue in this case for compliance with the law as mandated by United States Supreme Court in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

8. The law is well settled that in order "[t]o secure a conviction for any crime the Commonwealth must prove all necessary elements beyond a reasonable doubt." *Commonwealth v. Magliocco*, 584 Pa. 244, 267, 883 A.2d 479, 492 (2005).

9. *Compare: Commonwealth v. Reid*, 867 A.2d 1280 (Pa.Super.2005), *appeal denied*, 586 Pa. 725, 890 A.2d 1058 (2005) (affirming legality of a term of imprisonment of up to forty years for attempted murder, imposed following plea of *nolo contendere*, where defendant was not formally charged with attempted murder resulting in serious bodily injury, **but** where the Commonwealth indicated its desire to seek a maximum term of imprisonment of forty years, and recited facts of substantial bodily injury, to which defendant thereafter entered his plea of *nolo contendere* to the charge of attempted murder).

jury verdict here was limited to a finding of guilt on the crime of attempted murder generally, for which the maximum sentence is twenty years.[10]

¶ 18 Therefore, the sentence to serve a term of from seventeen and one-half years to forty years imprisonment that was imposed on the conviction of attempted murder was illegal and must be vacated. Concomitantly, since the vacation of the sentence on this conviction obviously affects the original sentencing scheme of the trial judge, we must also vacate the entire sentence and return this case to the trial court for resentencing. *See: Commonwealth v. Walls*, 303 Pa.Super. 284, 449 A.2d 690, 696 (1982); *see also: Commonwealth v. Benchoff*, 700 A.2d 1289 (Pa.Super.1997); *Commonwealth v. Dobbs*, 452 Pa.Super. 488, 682 A.2d 388 (1996).

¶ 19 Judgment affirmed in part and vacated in part, with resentencing to follow on all outstanding convictions. Jurisdiction relinquished.

---

**10.** The fact that the jury may have considered the question of serious bodily injury when they were evaluating the Commonwealth's evidence supporting the charge of aggravated assault is not relevant to a sufficiency analysis on the separate charge of attempted murder "where serious bodily injury results." The Courts of Pennsylvania have consistently respected the authority of a jury to find, or to decline to find, the existence of each element of each criminal offense. *See: Commonwealth v. Frisbie*, 889 A.2d 1271, 1273 (Pa.Super.2005), *appeal denied*, 588 Pa. 747, 902 A.2d 1239 (2006) ("[T]he rationale for allowing inconsistent verdicts is that it is the jury's sole prerogative to decide on which counts to convict to provide a defendant with sufficient punishment."); *see also: Commonwealth v. Petteway*, 847 A.2d 713, 718 (Pa.Super.2004). Nor is there authority for a trial court to reason to a verdict of guilt by tacking the finding of culpability of one element of a companion offense on to a separate criminal offense upon which the jury had also rendered a verdict. *See: Commonwealth v. Kearns*, No. 1012 WDA 2005, 907 A.2d 649 (filed August 31, 2006, Pa.Super.2006) (holding that there is no authority for the application of "intra-case collateral estoppel" in a criminal case).