## Commonwealth v. Auman

354

C.P. of Lehigh County, no. CR-1372-2009.

*Anna-Kristie Morffi, deputy district attorney,* for Commonwealth.

*Karen Schular, chief deputy public defender,* for defendant.

STEINBERG, *J.,* June 18, 2010—On October 1, 2009 the appellant, Diane Auman, was found guilty after a jury trial of criminal trespass[1] and guilty after a bench trial of criminal mischief.[2] The appellant was convicted of illegally entering her father's residence at 1848 Brown Street, Allentown, Pennsylvania by kicking in the back door.

Following the guilty verdicts this court ordered a presentence investigation report. A sentencing hearing was held on March 17, 2010, at which time the appellant was

---

1. 18 Pa.C.S. §3503(a)(1)(i).
2. 18 Pa.C.S. §3304(a)(5).

sentenced to not less than time-served nor more than 15 months in Lehigh County Prison followed by 12 consecutive months of probation.

On March 26, 2010, the appellant filed a timely "post-sentence motion for relief." In the post-sentence motion, the appellant contends (1) that the verdict was against the weight of the evidence; and (2) that the evidence at trial was insufficient to sustain the verdict of guilty. A hearing on the motion was held on May 24, 2010.

For the reasons discussed below, we find that the motion is without merit.

## FACTUAL BACKGROUND

The evidence presented at trial revealed that during the week of March 22, 2009 the defendant began contacting her father, Glenn Auman, for money. Mr. Auman agreed to meet the defendant on March 24, 2009 at a local McDonald's, where he provided her with $300. Mr. Auman agreed to meet again on March 25, 2009 to give the defendant an additional $3,000 to help her re-establish her life in Las Vegas, Nevada.[3] Thereafter, on March 28, 2009, the police were called to the residence at 1848 Brown Street, Allentown. Mr. Auman has resided at this property for more than five years, even though the property is owned by his mother, Mildred Elizabeth Ann Auman.[4] Mr. Auman returned home from work around 12:15 a.m. and found the defendant at the house. The back door of the home was kicked in, the front door was unlocked, the lights inside the home were on, and the

3. N.T.T. 52-53.
4. N.T.T. 9/30/09, 87-88.

defendant was in her old bedroom.[5] The defendant was belligerent and defiant, and she refused to leave. As a result, Mr. Auman called the police.[6] Upon their arrival, the defendant provided to the police a temporary protection from abuse order (PFA) dated March 27, 2009, which precluded Mr. Auman from being at the residence.[7] The temporary PFA was granted by the Honorable Carol McGinley on March 27, 2009.[8] Officer George Hummel testified that he was unable to confirm the validity of the PFA because he did not have any previous knowledge of its issuance and he was uncertain whether it had ever been served on Mr. Auman. Consequently, the police did not enforce the PFA and the defendant was arrested.[9] Mr. Auman was instructed by the police to not reside at the residence until after he was able to resolve the lingering questions about the validity of the PFA at the courthouse. The PFA was subsequently dismissed on April 2, 2009.[10]

Mr. Auman testified about the history of his relationship with the defendant. He was married to the defendant's mother until 1985, when they were divorced.[11] About eight years after the divorce the defendant's mother disappeared, and, to the present time, she has not been located. The defendant believes that Mr. Auman is somehow responsible for her mother's disappearance.[12]

5. N.T.T. 54, 59.
6. N.T.T. 59.
7. N.T.T. 60.
8. N.T.T. 102.
9. N.T.T. 134.
10. N.T.T.102.
11. N.T.T. 65.
12. N.T.T. 50, 51.

Subsequently, on April 8, 2006, the defendant's brother, to whom she was very close, committed suicide.[13] The defendant again blamed Mr. Auman for her brother's death.[14] Following these tragedies Mr. Auman's relationship with his daughter became very strained. Their interactions are always confrontational because the defendant makes accusations regarding the disappearance of her mother and death of her brother.[15] The defendant also has repeatedly returned to the family home without permission. In particular, on April 15, 2008, Mr. Auman returned to his home in the morning and found the defendant in her old bedroom and his house vandalized.[16] Mr. Auman contacted the police. The defendant admitted to causing the damage and she was arrested.[17] Officer Nicholas Erdo testified that the defendant was informed that she was not permitted to be at the residence, and the defendant was later convicted of criminal mischief.[18] As a result of the incident, Mr. Auman changed the locks on the house.[19] On another occasion, on June 19, 2008, Mr. Auman returned home from work and found the back door of his residence kicked in, the front door unlocked, and the interior house lights on.[20] Mr. Auman again found the defendant in her old bedroom.[21] He allowed her to spend the night, but in the morning the defendant refused

---

13. N.T.T. 50, 67.
14. N.T.T. 49-50.
15. N.T.T. 49, 70.
16. N.T.T. 47.
17. N.T.T. 47.
18. N.T.T. 93-94.
19. N.T.T. 47.
20. N.T.T. 48.
21. N.T.T. 48.

to leave.[22] As a result, Mr. Auman contacted the police and she was arrested.[23] The defendant was convicted for defiant trespass and criminal mischief.[24] Mr. Auman again changed the locks on the house.[25]

Ms. Mildred Auman, the defendant's grandmother who is 84 years old, testified that she resided at 1848 Brown Street with Mr. Auman until she moved to Country Meadows Assisted Living about five years ago. She further testified that she did not give the defendant permission to be at 1848 Brown Street.[26]

## DISCUSSION

### I. *Sufficiency of the Evidence*

A claim challenging the sufficiency of the evidence asserts that there is insufficient evidence to support at least one material element of the crime for which the defendant was convicted. *Commonwealth v. Lyons,* 833 A.2d 245, 258 (Pa. Super. 2003). In order to determine whether the evidence is sufficient to sustain the verdict, we must examine the evidence in the light most favorable to the Commonwealth, as the verdict winner, and determine whether there was sufficient evidence to allow the fact-finder to find every element of the crime beyond a reasonable doubt.

"In applying [this] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addi-

22. N.T.T. 48.
23. N.T.T. 52.
24. N.T.T. 97-98.
25. N.T.T. 52.
26. N.T.T. 88.

tion, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *Commonwealth v. Taylor,* 831 A.2d 661, 663 (Pa. Super. 2003), quoting *Commonwealth v. DiStefano,* 782 A.2d 574, 582 (Pa. Super. 2001).

Accordingly, a challenge of this type questions the adequacy of the evidence as to each element of each offense for which the defendant was convicted. *Commonwealth v. Johnson,* 910 A.2d 60, 65 (Pa. Super. 2006).

A person is guilty of criminal trespass when that person, "knowing that he is not licensed or privileged to do so, he . . . enters, gains entry by subterfuge or surreptitiously remains in any building or occupied structure or separately secured or occupied portion thereof . . . ."[27] Conversely, a person is guilty of criminal mischief when that person "intentionally damages real or personal property of another."[28] In her motion for post-trial relief the

27. 18 Pa.C.S. §3503(a)(1)(i).
28. 18 Pa.C.S. §3304(a)(5).

appellant set forth three arguments to support her claim that there was insufficient evidence to support the verdict: (1) that "[t]he defendant's grandmother . . . only testified that the defendant could not live at the Brown Street address by herself;"[29] (2) that "[t]he defendant's father . . . had no authority to bar the defendant from entering the Brown Street address;"[30] and (3) "[a]t the time of entry, the defendant had a temporary court order signed by the Honorable Carol K. McGinley granting the defendant access to the premises and excluding the defendant's father, Glen Auman."[31]

Here, the Commonwealth presented clear evidence that the defendant entered the residence at 1848 Brown Street by kicking in the back door, knowing that she was not licensed or privileged to do so. This evidence came in the form of testimony from Ms. Mildred Auman, Mr. Auman, and Officer Nicholas Erdo, all of whom stated that they directly and expressly informed the defendant that she is not permitted at the residence. Specifically, Ms. Mildred Auman testified that she did not give the defendant permission to live at the residence, in part because the defendant cannot get along with Mr. Auman. Similarly, Mr. Auman informed the defendant on April 15, 2008, June 19, 2008, and March 28, 2009, that she was not allowed at the property. On each of these dates the defendant broke into the residence, where she was later found by her father. Each time the defendant refused to leave the property and had to be forcibly removed by

---

29. Post-sentence motion, ¶4(a).

30. *Id.* at ¶(4)(b).

31. *Id.* at ¶(4)(c).

the police, resulting in criminal convictions for criminal mischief after the April 15, 2008 incident and for defiant trespass and criminal mischief after the June 19, 2008 incident. Mr. Auman even had the locks changed on the residence after each intrusion in order to dissuade the defendant's reentry. Lastly, Officer Nicholas Erdo testified that he responded to the domestic disturbance at 1848 Brown Street on April 16, 2008, and that the defendant was specifically instructed by police that she was not permitted at the property.

Additionally, the defendant's argument regarding the ability of Mr. Auman to restrict her access to the residence lacks any merit. It is understood as a general concept of property law that a tenant is entitled to exclusive possession of the leased premises. In this case, Mr. Auman is a tenant at will at the 1848 Brown Street property because he remains in possession of the property with the consent of the owner. See *Lasher v. Allegheny County Redevelopment Authority*, 211 Pa. Super. 408, 412, 236 A.2d 831, 833 (1967). As a tenant, the common law gives Mr. Auman a proprietary interest in the property. *Adams Sanitation Company Inc. v. Commonwealth Department of Environmental Protection,* 552 Pa. 304, 311, 715 A.2d 390, 394 (1998). Accordingly, Mr. Auman has the authority to exclude the defendant from 1848 Brown Street.

Moreover, we find that the police properly refused to enforce the PFA order. It is the general rule of this Commonwealth that orders entered as a result of the perpetration of fraudulent information are a nullity. In particular, the court in *Commonwealth v. Bossche,* 324 Pa. Super. 1, 471 A.2d 93 (1984), determined that the defendant's sentence could be modified because it had been imposed

based on the affirmative misrepresentation that the defendant did not have a prior criminal record. The court stated that the sentence was procured by the defendant by fraud, thereby making the sentencing proceedings a nullity. *Id.* at 7, 417 A.2d at 96. See also, *Commonwealth v. Harper,* 890 A.2d 1078 (Pa. Super. 2006) (court retains its authority to rescind a decision where that decision is obtained through fraud); *Shaw v. Shaw,* 467 N.Y.S.2d 231, 234 (Oct. 3, 1983) ("[A] judgment obtained through extrinsic fraud . . . is considered a nullity . . . .The court will have no part in enforcing a judgment which was procured by a fraud practiced on it . . . .").

In this case, the PFA order did not grant to the defendant lawful access to 1848 Brown Street because the defendant intentionally misled the court in her application for the PFA. Specifically, the defendant identified her current address as 1848 Brown Street. All the evidence presented in this case demonstrates that this representation was erroneous. For this reason, the PFA order was a nullity.

Accordingly, based on the facts and circumstances presented at trial, we find that there was sufficient evidence to support convictions for criminal trespass and criminal mischief.

## II. *Weight of the Evidence*

A challenge to the weight of the evidence is a distinct legal concept from a challenge to the sufficiency of the evidence. *Commonwealth v. Davis,* 799 A.2d 860, 864 (Pa. Super. 2002). A claim that the verdict is contrary to the weight of the evidence "concedes that there is suf-

ficient evidence to sustain the verdict but nevertheless contends that the trial judge should find the verdict so shocking to one's sense of justice and contrary to the evidence as to make the award of a new trial imperative." *Commonwealth v. Robinson,* 834 A.2d 1160, 1167 (Pa. Super. 2003); see also, *Commonwealth v. Lyons,* 833 A.2d 245, 258 (Pa. Super. 2003).

"Trial judges in reviewing a claim that the verdict is against the weight of the evidence do not sit as a 13th juror. Rather the role of the trial judge is to determine that 'notwithstanding all of the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" *Commonwealth v. Widmer,* 560 Pa. 308, 320, 744 A.2d 745, 752 (2000). A trial judge should not be inclined to grant a new trial because of a mere conflict in the testimony.

The defendant sets forth the same three arguments to support her claim that the verdict was against the weight of the evidence: (1) that "[t]he defendant's grandmother . . . only testified that the defendant could not live at the Brown Street address by herself;"[32] (2) that "[t]he defendant's father . . . had no authority to bar the defendant from entering the Brown Street address;"[33] and (3) that "[a]t the time of entry, the defendant had a temporary court order signed by the Honorable Carol K. McGinley granting the defendant access to the premises and excluding the defendant's father, Glen Auman."[34]

---

32. Post-sentence motion, ¶4(a).

33. *Id.* at ¶(4)(b).

34. *Id.* at ¶(4)(c).

As we stated above, the defendant's three arguments are not supported by the record. From the evidence, it is reasonable to have concluded that the appellant entered the premises at 1848 Brown Street without permission from her father or her grandmother, and that she intentionally damaged the back door when she kicked it in. The fact-finder could have readily concluded that the defendant was guilty of criminal trespass and criminal mischief. Accordingly, the defendant's request for a new trial is denied.

## ORDER

And now, June 18, 2010, it appearing that the appellant has filed a post-sentence motion in the above-captioned matter; and for the reasons set forth in the accompanying opinion; it is hereby ordered the post-sentence motion is denied.