J-A24025-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MICHAEL SHOWERS | |
| Appellant | No. 3431 EDA 2015 |

Appeal from the Judgment of Sentence November 2, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0012440-2013

BEFORE:  BOWES, J., OTT, J., and SOLANO, J.

MEMORANDUM BY OTT, J.:                          **FILED JANUARY 18, 2017**

Michael Showers appeals from the judgment of sentence imposed on November 2, 2015, in the Court of Common Pleas of Philadelphia County. On April 16, 2015, a jury convicted Showers of robbery.[1]  The court sentenced him to a term of 25 to 50 years' imprisonment as a third-strike offender.[2]  On appeal, Showers raises weight and sufficiency claims, as well as the court's imposition of the recidivist statute.  For the reasons below, we affirm Showers's judgment of sentence.

The trial court set forth the facts as follows:

---

[1]  18 Pa.C.S. § 3701(a)(1)(ii).

[2]  *See* 42 Pa.C.S. § 9714 (recidivism statute relating to sentences for second and subsequent offenses).

The Commonwealth called the complainant, Jigna Patel ("Patel") as its first witness. Patel testified that she worked as a manager for Subway Restaurant at 330 Oregon Avenue and was working there on February 2, 2013. Patel further testified that, at around 6:00 p.m. on that day, a man wearing a black scarf over his face came into the store and asked for cookies. Patel stated that, as she went towards the cookie rack next to her cash register, the man produced a gun and demanded $10 and $20 bills in her register. Patel stated that she gave the man the money and he told her to open the back door of the property. Patel testified that she told the man that there was not a back door to the property so the man ran out the front door.

Patel testified that the man was wearing a white and gray hooded sweatshirt, blue jeans, and black sneakers. Patel further testified that, as the man was leaving the Subway, he bumped into a regular customer who was entering the store at the same time. Patel stated that the customer called the police and she talked to police roughly 20 minutes after the robbery occurred. Patel further stated that she could not see the gun the man was carrying nor could she describe what it looked like, but she saw the front of the gun. Patel described the robber as a white male, approximately 5'9" and 180 pounds. Patel further testified that the man was wearing a glove on his right hand only. Patel stated that she spoke with two female police officers at the scene, then talked to detectives and gave a written statement shortly thereafter. Patel further stated that she told detectives that she would not be able to recognize the person who robbed her because he had a black scarf wrapped around his face. Patel testified that the detectives showed her pictures of people, but she was unable to identify anyone.

The Commonwealth called Officer Lynne Zirilli ("Zirilli") as its next witness. Zirilli testified she had been a police officer in the 3rd District for 18 years and that, on February 2, 2013, she responded to a radio call for a robbery in progress at a Subway on 330 Oregon Avenue. Zirilli further testified that she and her partner received the call at approximately 6:07 p.m. and came into contact with Patel when they arrived at the scene. Zirilli stated that Patel seemed to be in shock and told them that she was robbed. Zirilli further stated Patel described the robber as a white male, approximately 5'8" tall with a heavy build and wearing a white and gray hooded sweatshirt with a black mask, dark colored jeans and latex gloves. Zirilli testified that she

- 2 -

relayed the description over police radio so other officers could check the area but nobody was stopped.

The Commonwealth called Detective Neal Aitken ("Aitken") as its next witness. Aitken testified that he was assigned to the South Detective Division and had been a detective since 1990. Aitken further testified that, on or about February 14 or 15, 2013, he and Detective Michael McKenna ("McKenna") went to the scene at 330 Oregon Avenue and recovered video from a custom car business in the area called Eargasm. Aitken stated that Eargasm was located in the building next to where the Subway was located. As the Commonwealth played the video recovered from Eargasm, Aitken testified that he saw a man run across the screen, that the image was significant as it was taken at the time immediately following the robbery and the person was wearing the same clothing as the robber. Aitken also stated that the person on the video ran west on the sidewalk adjacent to the Subway and then made a left turn and ran south on the 2700 block of South Randolph Street.

The Commonwealth called McKenna as its next witness. McKenna testified that he worked for the South Detective Division and that he investigated the robbery at 330 Oregon Avenue. The Commonwealth then played a surveillance video obtained from the Subway. McKenna testified that the unique two-toned sweatshirt the robber was wearing and the fact that the robber was wearing a single black glove on his right hand stood out to him as he watched the video. McKenna further testified that the sweater was an off-white or gray color with black and white stripes on the sleeves and across the chest and waist. The Commonwealth then played the surveillance video obtained from Eargasm. McKenna testified that he observed a person run southwest onto the 2700 block of Randolph Street and that the person had a limp or a hitch in his gait as though he was favoring his right foot.

McKenna also testified that, near the beginning of the investigation, the police received an anonymous tip which led them to focus the investigation on [Showers]. McKenna further testified that, based upon the tip and his investigation to that point, he obtained a search warrant for [Showers's] house at 2732 Randolph Street on February 14, 2013 but did not recover any evidence from the house. McKenna stated that, after he executed the search warrant, he and Aitken returned to the

Subway to survey the area. McKenna further stated that Patel had mentioned that the robber wanted to go out the back door of the Subway and he wanted to see why the offender would have wanted to leave through the back door. McKenna testified that the back door led to a rear alleyway which ran between a shopping mall and the east side of Randolph Street. He theorized that the robber could use the alley to access the 2700 block of Randolph Street, at which time there would only be a short walk to [Showers's] residence at 2732 South Randolph Street.

McKenna testified that, on April 23, 2013, he was provided with a photograph from Whitman Check Cashing, located on the southwest corner of Randolph Street and Oregon Avenue, which showed [Showers] wearing a sweatshirt that looked identical to the one worn by the robber. McKenna further testified that he found a public Facebook profile under [Showers's] name which had a photograph of [Showers] wearing a sweatshirt that was identical to the one worn by the suspect in the video. McKenna stated that, in the photograph taken from Whitman Check Cashing, [Showers] appeared to be resting the left side of his body on a crutch and that, when he had a chance to talk with [Showers], he noticed that [Showers] walked with a noticeable limp to his right foot. McKenna further stated that [Showers] told him that he had been in an auto accident and had pins in his right ankle. McKenna testified that, from other photos of [Showers], he observed that [Showers] had a small tattoo on his right hand between his thumb and first finger but did not have any tattoos on his left hand. McKenna further testified that he showed Patel and Joseph Furia ("Furia") a photo array of eight individuals including [Showers] but they were both unable to identify [Showers]. McKenna stated that, when he interacted with [Showers], he noticed that [Showers] was approximately 5'9" tall and 225 pounds, which was consistent with the way Patel and Furia described the offender in the robbery.

The Commonwealth then read a stipulation, by and between counsel, that Commonwealth Exhibit C-13 was a fair and accurate photo of a tattoo on [Showers's] right hand and that the photo was taken on November 12, 2012. There was a further stipulation, by and between counsel, that Commonwealth Exhibit C-11 was provided by Whitman Check Cashing and that if Michael Angelo were called to testify, he would testify that he was the teller on November 13, 2012 when the photo was taken

by their surveillance, that the person who cashed a check during that transaction was [Showers], who cashed a check made out to him drawn on a check belonging to Norma Showers with the address of 2732 South Randolph Street. He would further testify that the photo was a fair and accurate photo of the transaction he witnessed on November 13, 2012.

The Commonwealth called Furia as its next witness. Furia testified that he and his son went to the Subway at 330 Oregon Avenue at around 6:00 p.m. on February 2, 2013. Furia further testified that, as he walked through the door, a man wearing a scarf bumped into him and said, "I'm sorry" and "it's cold out there." Furia stated that he then walked up to the counter and the girl who was usually there was peeking out from the back of the store. Furia further stated that the man started running out of the door with a noticeable limp and ran towards Randolph Street. Furia testified that the woman told him that the man had taken all of her twenty dollar bills and so he went to look for the man but he was gone. Furia testified that he went next door and called the police for her as she was too scared to call the police on her own.

Furia testified that they rode around the neighborhood with the police to see if they could find the man, but they were unable to do so. Furia further testified that McKenna later contacted him and had him look at a group of photographs, but he was unable to identify anyone that he had seen that night. Furia stated that the robber had the scarf over his face and his hat down so he could not see what he looked like. Furia further stated that the man had his hands in his pockets as he left. The Commonwealth then played the video surveillance obtained from the Subway restaurant. Furia testified that he recognized himself and the man he bumped into on the video. Furia further testified that he went straight to the front counter after he bumped into the man and when he turned around the man started running with a limp. After Furia testified, the Commonwealth rested.

[Showers] stipulated, by and between counsel, that on May 21, 2012, [Showers] had surgery on his right ankle in which several pins were placed and that surgery occurred at Jefferson Hospital. After the stipulation, the defense rested.

Trial Court Opinion, 1/28/2016, at 2-7 (record citations omitted).

- 5 -

On May 30, 2013, the police arrested Showers and charged him with robbery and possession of an instrument of crime ("PIC"). A two-day jury trial began on April 15, 2015. The next day, the jury convicted Showers of robbery and acquitted him of PIC. On November 2, 2015, the trial court sentenced Showers to a term of 25 to 50 years' imprisonment on the third-strike robbery charge. This appeal followed.[3]

In Showers's first argument, he claims the verdict was against the weight and sufficiency of the evidence. Showers's Brief at 12. Specifically, Showers states, "The evidence, and the reasonable inferences drawn from that evidence, do not prove beyond a reasonable doubt that [he] is guilty of the robbery[.]" *Id.* at 13. He notes neither Patel nor Furia could positively identify him as the robber. *Id.* Moreover, he asserts:

> The Commonwealth based most of its case on mere speculation since [Showers] owned a sweatshirt that was similar to the one worn by the offender, and detectives "theorized" that [Showers] planned the robbery and wished to leave out of the back door of the restaurant due to the proximately of the restaurant to his home. Sweatshirts are mass produced, so identification by detectives based on an article of clothing is insufficient to prove beyond a reasonable doubt that [Showers] committed the crime. To say that this particular sweatshirt was considerably unique in that it is not often that someone would come across another person wearing something similar is farfetched.

---

[3] On December 1, 2015, the trial court ordered Showers to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Showers filed a concise statement on December 18, 2015. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on January 28, 2016.

*Id.* Additionally, Showers states it was not reasonable for the Commonwealth to assume Showers wore a black glove, as seen on the store video, to cover up a small tattoo on his right hand, because Patel testified the perpetrator wore a latex glove on the one hand. *Id.* Lastly, Showers points out that a search warrant was issued for his home and no evidence was recovered. *Id.*

As a prefatory matter, we note that in framing his issue as a challenge to the weight and sufficiency of the evidence, Showers conflates two unique claims into one argument. As the Commonwealth notes, "Challenges to the sufficiency of the evidence and the weight of the evidence are distinct inquiries that must be separately briefed and analyzed; an argument as to one may not simply incorporate the argument as to the other." Commonwealth's Brief at 10, *citing* **Commonwealth v. Birdseye**, 637 A.2d 1036, 1039-1040 (Pa. Super. 1994), *aff'd*, 670 A.2d 1124 (Pa. 1996), *cert. denied*, 518 U.S. 1019 (1996). Furthermore, Showers never preserved his weight-of-the-evidence claim with the trial court either orally at any time before sentencing, by written motion, or in a post-sentence motion, and he did not include the issue in his concise statement. **See** Pa.Crim.P. 607(A)(1)-(3); **see also** Pa.R.A.P. 1925(b). Therefore, Showers has waived his weight claim. **Commonwealth v. Lofton**, 57 A.3d 1270, 1273 (Pa. Super. 2012), *appeal denied*, 69 A.3d 601 (Pa. 2013) ("Failure to properly preserve the claim will result in waiver, even if the trial court addresses the

issue in its opinion."); *see also* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.").

With respect to Showers's argument in terms of a sufficiency challenge, we are guided by the following:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Melvin*, 103 A.3d 1, 39-40 (Pa. Super. 2014) (citation omitted), *appeal denied*, 112 A.3d 651 (Pa. 2015).

Showers's argument focuses largely on an allegation that the evidence failed to identify him as the robber in question. To this extent, we are also guided by the following:

> "[E]vidence of identification need not be positive and certain to sustain a conviction." Although common items of clothing and general physical characteristics are usually insufficient to support

a conviction, such evidence can be used as other circumstances to establish the identity of a perpetrator. Out-of-court identifications are relevant to our review of sufficiency of the evidence claims, particularly when they are given without hesitation shortly after the crime while memories were fresh. Given additional evidentiary circumstances, "any indefiniteness and uncertainty in the identification testimony goes to its weight."

*Commonwealth v. Orr*, 38 A.3d 868, 874 (Pa. Super. 2011) (*en banc*)

(internal citations omitted), *appeal denied*, 54 A.3d 348 (Pa. 2012).

Robbery is defined, in relevant part, as follows:

**(1)** A person is guilty of robbery if, in the course of committing a theft, he:

…

**(ii)** threatens another with or intentionally puts him in fear of immediate serious bodily injury[.]

18 Pa.C.S. § 3701(a)(1)(ii). "An act shall be deemed 'in the course of committing a theft' if it occurs in an attempt to commit theft or in flight after the attempt or commission." 18 Pa.C.S. § 3701(a)(2). Moreover,

"[t]he evidence is sufficient to convict a defendant of robbery under this section if the evidence demonstrates aggressive actions that threatened the victim's safety. The court must focus on the nature of the threat posed by an assailant and whether he reasonably placed a victim in fear of immediate serious bodily injury. Additionally, this Court has held that the threat need not be verbal." *Commonwealth v. Jannett*, 58 A.3d 818, 822 (Pa. Super. 2012) (citations and internal quotations omitted). "Serious bodily injury" is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301. "When determining whether a victim has been placed in fear of serious bodily injury, this Court uses an objective standard; therefore, [the victim's] subjective state of

- 9 -

mind during the robbery is not dispositive." ***Commonwealth v. Kubis***, 978 A.2d 391, 398 (Pa. Super. 2009) (concluding that the nature of appellant's threat to stab the victim was such that a reasonable person in the victim's position would fear for his life or safety even though no knife was physically produced during robbery).

***Commonwealth v. Valentine***, 101 A.3d 801, 807 (Pa. Super. 2014),

*appeal denied*, 124 A.3d 309 (Pa. 2015).

Here, the trial court found the following:

> In the case at bar, the evidence presented at trial was sufficient to find [Showers] guilty of robbery. Patel testified that a man wearing a white and gray hooded sweatshirt and a glove on his right hand came to her Subway Restaurant on 330 Oregon Avenue at around 6:00 p.m. on February 2, 2013, pointed a gun at her, and demanded the $10 and $20 bills from her cash register. Patel further testified that she gave the man the money and then he left through the front door. Patel stated that the man was approximately 5'9" tall and weighed approximately 180 pounds. Furia testified that, as he entered the Subway with his son at around 6:00 p.m., he bumped into a man leaving through the front door. Furia further testified that the man then ran out the door with a noticeable limp and Patel told him that the man had taken her $20 bills. Aitken testified he recovered surveillance footage from an adjacent business which showed a man wearing the same type of clothing as the robber [who had] run onto 2700 South Randolph Street. McKenna testified that he obtained photographs of [Showers] from Whitman Check Cashing and [Showers's] public Facebook profile which showed [Showers] wearing the same unique gray and white hooded sweatshirt worn by the robber. McKenna further testified that he noticed on the surveillance footage that the robber walked with a noticeable limp in his right foot and that [Showers] had a noticeable limp in his right foot due to an auto accident. McKenna stated that the back door of the Subway property led to the 2700 block of South Randolph Street, which was only a short walk to [Showers's] residence at 2732 South Randolph Street. McKenna further stated that [Showers] had a small tattoo on his right hand and that he matched the height and weight of the description given by Patel and Furia. Thus, when afforded all favorable inferences from this evidence, the

- 10 -

Commonwealth proved that [Showers] pointed a firearm at Patel in the course of taking $10 and $20 bills from her and that he placed her in mortal fear of deadly injury when he did so. Thus, the evidence presented at trial was sufficient to find [Showers] guilty of robbery.

Trial Court Opinion, 1/28/2016, at 9-10.

Notwithstanding the lack of any positive identification by Patel or Furia, our review of the entire record, in the light most favorable to the Commonwealth as the verdict winner, and drawing all reasonable inferences therefrom, confirms our accord with the trial court's decision. The Commonwealth presented sufficient circumstantial evidence that demonstrated Showers was the perpetrator, and he placed Patel in fear of serious bodily injury when he pointed a gun and asked for money, including: (1) the video surveillance footage; (2) the pictures of Showers from the Whitman Check Cashing and Facebook page wearing the same clothing as the robber; (3) the visible limp on the right foot that both Showers and the robber had; and (4) the location of the Subway in relation to Showers's residence. We emphasize the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. **See Melvin**, **supra**. Therefore, even if Showers's sweatshirt was "mass produced" as he alleges, it still is identical to the one the robber was wearing. Furthermore, Showers ignores the distinct fact that he and the robber were both observed limping on the right foot side. Lastly, we note "any indefiniteness and uncertainty in the identification testimony goes to its

weight," **Orr**, 38 A.3d at 874, which is an argument that Showers has waived for failure to properly preserve.[4]  Accordingly, Showers's sufficiency claim fails.

In his final argument, Showers complains the trial court erred when it sentenced him to a third-strike offense because of the insufficiency of the evidence.  Showers's Brief at 14.  He merely states, "It cannot be proven beyond a reasonable doubt that [he] was responsible for this robbery, so the sentence should be vacated and a new trial granted." **Id.**

Because we find there was sufficient evidence to support Showers's robbery conviction as discussed **supra**, his argument fails.  Nevertheless, it also bears mentioning the following:

> The issue of the proper interpretation of the mandatory minimum sentencing provisions of 42 Pa.C.S.A. § 9714, the statute at issue in this case, has been held to implicate the legality of the sentence imposed.  **Commonwealth v. Ausberry**, 891 A.2d 752, 754 (Pa. Super. 2006) (citation omitted).  A "defendant or the Commonwealth may appeal as of right the legality of the sentence." **Ausberry**, 891 A.2d at 754; **see also** 42 Pa.C.S.A. § 9781(a).
>
> The scope and standard of review applied to determine the legality of a sentence are well established.  If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. **Commonwealth v. Johnson**, 2006 PA Super 265, ¶ 15, 910 A.2d 60, 66, 2006 WL 2729492.

---

[4]  Additionally, to the extent Showers argues the color of the glove that the robber was wearing varied with respect to Patel's testimony and the store video, and no evidence of the robbery was found during a search of his home, we find these assertions of no consequence since there was an abundance of other circumstantial evidence to establish he was the robber.

An illegal sentence must be vacated. *Johnson*, 2006 PA Super 265, at ¶ 15, 910 A.2d at 66. In evaluating a trial court's application of a statute, our standard of review is plenary and is limited to determining whether the trial court committed an error of law. *Id.,* 2006 PA Super 265 at ¶ 15, at 66.

*Commonwealth v. Leverette*, 911 A.2d 998, 1001–1002 (Pa. Super. 2006).

The statute provides, in pertinent part, as follows:

**§ 9714. Sentences for second and subsequent offenses**

(a) MANDATORY SENTENCE.—

…

(2) Where the person had at the time of the commission of the current offense previously been convicted of two or more such crimes of violence arising from separate criminal transactions, the person shall be sentenced to a minimum sentence of at least 25 years of total confinement, notwithstanding any other provision of this title or other statute to the contrary. Proof that the offender received notice of or otherwise knew or should have known of the penalties under this paragraph shall not be required. Upon conviction for a third or subsequent crime of violence the court may, if it determines that 25 years of total confinement is insufficient to protect the public safety, sentence the offender to life imprisonment without parole.

42 Pa.C.S. § 9714(a). Moreover,

[t]he sentencing court, prior to imposing sentence on an offender under subsection (a), shall have a complete record of the previous convictions of the offender, copies of which shall be furnished to the offender. If the offender or the attorney for the Commonwealth contests the accuracy of the record, the court shall schedule a hearing and direct the offender and the attorney for the Commonwealth to submit evidence regarding the previous convictions of the offender. The court shall then determine, by a preponderance of the evidence, the previous convictions of the offender and, if this section is applicable, shall impose sentence in accordance with this section.

42 Pa.C.S. § 9714(b).

Here, the trial court found the following:

In the case at bar, this Court did not err when it sentenced [Showers] to robbery as a third-strike. As [Showers's] court summary readily showed, [Showers] previously had been convicted of two crimes of violence in Pennsylvania. On March 18, 1993, [Showers] pled guilty to robbery as a first-degree felony at docket CP-51-CR-0934001-1992. On April 23, 2008, [Showers] pled guilty to burglary as a first-degree felony on docket CP-51-CR-0013390-2007. Thus, [Showers] had two prior convictions for crimes of violence arising from separate criminal transactions. Consequently, this Court did not err when it found that his instant conviction for robbery as a first-degree felony was a third-strike conviction and accordingly sentenced him to 25 to 50 years state incarceration.

Trial Court Opinion, 1/28/2016, at 13.

We agree with the court's findings, and note Showers does not challenge the status of his two prior convictions or his present conviction as crimes of violence.[5] Accordingly, his legality of sentence claim is unavailing.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/18/2017

_____

[5] We note the pre-sentence investigation was not included in the certified record; however, as stated above, Showers does not take issue with these prior convictions.