J-S52011-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| AARON MCCLELLAND, | |
| Appellant | No. 1778 WDA 2014 |

Appeal from the PCRA Order October 10, 2014
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0012748-2010

BEFORE: SHOGAN, OLSON, and WECHT, JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED OCTOBER 22, 2015**

Appellant, Aaron McClelland, appeals from the October 10, 2014 order denying his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541–9546. After careful review, we affirm.

Quoting the trial court, we previously summarized the facts of the crime in our disposition of Appellant's direct appeal, as follows:

> The charges against [Appellant] stem from an incident that occurred on July 11, 2010, at approximately 12:40 p.m. A woman called Pizza Bellagio and placed an order to be delivered to an address in the Hill District of Pittsburgh. The delivery driver, Zamir Khudoykulov, left to deliver the order. He returned approximately 45 to 50 minutes later, bleeding profusely and saying that he had been shot. The pizza shop did not receive a call from anyone inquiring why their food had not been delivered.
>
> During the course of his investigation, Detective Matthew Gray determined that the telephone number used to call the pizza shop belonged to Chaquishia Pack. Eventually, Pack

admitted to Detective Alisha Duncan that she called the pizza shop and placed the order.

Pack, who is mother to [Appellant's] child, testified that she initially told police that she let "Boo," a man she knew from the neighborhood, and another man into her apartment to use her phone to call a jitney. Later she said that she lent her phone to "Boo" who took it to the apartment across the hall for ten to fifteen minutes. Pack testified that both times the deliveryman called, she spoke with him. She said she told him she hadn't ordered any food and took the phone outside her apartment to find "Boo." Again she claimed that "Boo" had the phone for ten to fifteen minutes before returning it. Telephone records indicated that the two calls from the driver to Pack were slightly over a minute in duration, and approximately four minutes apart.[1]

> [1] At a subsequent hearing on Post-Sentence Motions, Pack indicated that she was fully aware of [Appellant's] plan to steal from the delivery man but that she testified falsely because she was afraid of [Appellant].

On two different occasions, the victim was shown a photo array, each containing a suspect identified by the investigating officers. On the first array, which did not contain [Appellant's] photo, the victim failed to identify his assailant. On the second array, the victim without hesitation or doubt identified [Appellant] as his assailant.

The victim, Khudoykulov, testified that upon arrival to the address he was given, no one was outside to receive the delivery. He rang the bell and a woman answered and told him that she did not order any food. Khudoykulov called the number from which the order had been placed.[2] A woman answered but quickly handed the phone to a man. The man said that he was at the apartment building on the other side of the street.

> [2] Pack provided a different number when she placed the order. That number was no longer in service, but the pizza shop automated order system printed the number that appeared on the caller ID on the order ticket.

Khudoykulov went across the street to the apartment complex located there and called out, "I'm here. Where are you at? So get the food." When nobody responded, he again called the number from which the order had been placed. A woman answered and again immediately gave the phone to the man who had just told him he was in the apartment building. This time, the man said "I'm flagging you. You see me?" to Khudoykulov.

Khudoykulov looked up and saw at an upstairs window a man waving what appeared to be a bandana. Khudoykulov waited for the customer to come out, but he did not. Khudoykulov then entered the building and went to the second floor, where he encountered a man with a bandana covering his mouth and half of his nose. At gunpoint, the man took Khudoykulov's wallet and approximately fifteen dollars in cash. Khudoykulov mistakenly thought the gun was a fake, and attempted to wrestle it from the man. The assailant fired one shot. Wounded, Khudoykulov sat down and said "Okay, don't shoot, take anything," but the man fired several more shots at Khudoykulov before running upstairs. In court, Khudoykulov identified [Appellant] as his assailant.

*Commonwealth v. McClelland*, 1402 WDA 2011, 60 A.3d 587 (Pa. Super.

filed August 31, 2012) (unpublished memorandum at 1–3). We summarized

the ensuing procedural history as follows:

The trial court conducted a bench trial on March 18, 2011, trying [Appellant] together with his co-defendant, Pack. It adjudged him guilty of all charges on March 29, 2011.[1] The trial court sentenced [Appellant] to 20 to 40 years of incarceration for attempted criminal homicide, a concurrent term of imprisonment of seven and a half to 15 years for aggravated assault, a consecutive term of imprisonment of five to 20 years for robbery, and a concurrent term of imprisonment of seven

_____

[1] The trial court found Appellant guilty of attempted homicide, aggravated assault, robbery, and conspiracy to commit robbery.

and a half to 15 years for conspiracy.[2] [Appellant] filed post-sentence motions challenging, *inter alia*, the weight of the evidence to support his convictions. They were denied by the trial court on August 16, 2011.

*Id*. at 3–4. Appellant filed a timely notice of appeal on August 29, 2011. Both Appellant and the trial court complied with Pa.R.A.P. 1925. We affirmed the judgment of sentence on August 31, 2012, and our Supreme Court denied further review on April 3, 2013. *McClelland*, 60 A.3d 587, *appeal denied*, 432 WAL 2012, 63 A.3d 1245 (Pa. 2013).

Appellant filed a *pro se* PCRA petition on January 8, 2014. The PCRA court appointed counsel, who filed an amended PCRA petition on May 9, 2014. The Commonwealth filed an answer on August 15, 2014, and a supplemental answer on August 18, 2014. On August 27, 2014, the PCRA court filed a notice of intent to dismiss the PCRA petition pursuant to Pa.R.Crim.P. 907. Counsel filed a motion for leave to amend the amended PCRA petition on September 9, 2014, and a response to the court's notice of intent to dismiss. In an order dated October 8, 2014, and filed on October 10, 2014, the PCRA court dismissed the PCRA petition without a hearing; the docket does not reflect an order disposing of Appellant's motion for leave to amend. Appellant filed a notice of appeal on October 29, 2014. Both Appellant and the PCRA court complied with Pa.R.A.P. 1925.

---

2 The resulting aggregate sentence was twenty-five to sixty years of imprisonment.

Appellant raises the following issues for our review:

1. Did the PCRA Court err in failing to find that the sentence of 20 to 40 years' imprisonment imposed upon [Appellant] for attempted homicide was illegal in that the written information failed to allege that serious bodily injury had resulted and where the record does not reflect that Assistant District Attorney's oral motion to amend the information was granted prior to the close of evidence?

2. Did the PCRA Court err in failing to find trial counsel ineffective in failing to seek suppression of the photo identification based upon a claim of an unduly suggestive photo array?

3. Did the PCRA Court err in failing to find one or more violations of ***Apprendi v. New Jersey***, 530 U.S. 466 (2000), or ineffective assistance of counsel claims based upon ***Apprendi*** violations, namely that:

> Appellant's waiver of jury trial was invalid as Appellant was not apprised of his ***Apprendi*** rights and counsel was ineffective in failing to raise the issue post-trial or on appeal[.]
>
> Appellant's sentence of 20 to 40 years imprisonment was illegal as Appellant never waived his ***Apprendi*** rights and the fact supporting the aggravated sentence was found by the court and not a jury[.]
>
> Appellant's sentence was illegal as there was no explicit finding on the record for the fact necessary to aggravate the maximum sentence from 20 to 40 years.

4. Did the PCRA court err in denying Appellant's Motion for Leave to Amend his PCRA petition?

Appellant's Brief at 3.

When reviewing the propriety of an order denying PCRA relief, we consider the record "in the light most favorable to the prevailing party at the

PCRA level." **Commonwealth v. Stultz**, 114 A.3d 865, 872 (Pa. Super. 2015) (quoting **Commonwealth v. Henkel**, 90 A.3d 16, 20 (Pa. Super. 2014) (*en banc*)). This Court is limited to determining whether the evidence of record supports the conclusions of the PCRA court and whether the ruling is free of legal error. **Commonwealth v. Rykard**, 55 A.3d 1177, 1183 (Pa. Super. 2012). We grant great deference to the PCRA court's findings that are supported in the record and will not disturb them unless they have no support in the certified record. **Commonwealth v. Rigg**, 84 A.3d 1080, 1084 (Pa. Super. 2014). A PCRA court's credibility findings, where supported by the record, are binding on a reviewing court. **Commonwealth v. Dennis**, 17 A.3d 297, 301 (Pa. 2011). "There is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary." **Commonwealth v. Jones**, 942 A.2d 903, 906 (Pa. Super. 2008) (quoting **Commonwealth v. Barbosa**, 819 A.2d 81 (Pa. Super. 2003)).

Appellant's first issue asserts that the criminal information was not formally amended at count one, criminal attempt to commit homicide, to include causing serious bodily injury, thereby increasing the statutory maximum from twenty to forty years of imprisonment. Appellant contends that this failure to amend compels that the trial court could have imposed

only a maximum twenty-year sentence. Thus, he argues the sentence imposed is illegal. Appellant's Brief at 12–13.

The statutory section setting forth the allowable punishment for criminal attempt homicide provides as follows:

> **c) Attempt, solicitation and conspiracy.--**Notwithstanding section 1103(1) (relating to sentence of imprisonment for felony), a person who has been convicted of attempt, solicitation or conspiracy to commit murder, murder of an unborn child or murder of a law enforcement officer where serious bodily injury results may be sentenced to a term of imprisonment which shall be fixed by the court at not more than 40 years. Where serious bodily injury does not result, the person may be sentenced to a term of imprisonment which shall be fixed by the court at not more than 20 years.

18 Pa.C.S. § 1102 (c).

Without meaningful discussion, the trial court found that the issue was waived. We disagree. In the context of the PCRA, illegal sentencing claims cannot be waived, although they must be presented in a timely PCRA petition. *Commonwealth v. Taylor*, 65 A.3d 462, 465 (Pa. Super. 2013). The instant PCRA petition was timely. Nevertheless, it is well settled that we may affirm the decision of the trial court on any valid basis appearing of record. *Commonwealth v. Moore*, 937 A.2d 1062, 1073 (Pa. 2007).

During the jury trial waiver colloquy, Appellant was informed, *inter alia*, of the Commonwealth's motion to amend count one, the sentence he faced as a result, and the remaining charges against him, as follows:

> By the court: Mr. McClelland, . . . you are charged with criminal attempt homicide—

* * *

By the Commonwealth: Your Honor, at this time the Commonwealth would make an oral motion to amend that count at Count 1, that the defendant caused serious bodily injury. That would increase the statutory maximum to 40 years.

By the court: On the criminal attempt?

By the Commonwealth: Yes. And we would make motion to amend that to causing serious bodily injury. The testimony of the victim will—that is for argument.

* * *

By the court: Are you talking about the aggravated assault?

By the Commonwealth: No. The criminal attempt. If the criminal attempt homicide is with serious bodily injury, it increases the statutory maximum to a 40-year period.

N.T., 3/18/11, at 133–134.

Appellant's issue is focused upon his contention that the trial transcript lacks "an actual ruling on the Commonwealth's oral motion or any affirmative verbal indication on the record that the Commonwealth's motion had been granted and that the information had in fact been amended." Appellant's Brief at 14; **see also** Appellant's Reply Brief at 1 ("no verbal response either granting or denying the motion appears on the transcript"). Appellant acquiesces that while the trial court and the parties proceeded as if the motion had been granted and the information amended, "it does not appear the motion was actually granted." Appellant's Brief at 14. In contrast, the Commonwealth maintains "the record makes clear that the trial court did grant the Commonwealth's motion to amend the Information."

Commonwealth Brief at 9. While the notes of testimony lack the specific "magic words" Appellant seeks, we agree with the Commonwealth the trial court granted the motion.[3]

The face sheet of the criminal information contains the following order by the trial court:

> And now, March 18, 2011, on motion of ADA moves to amend ct 1 to Criminal Attempt, causing serious bodily injury.
>
> *Eodie*: Motion granted.
>
> By the Court
> Jill E. Rangos.

Information, Docket Entry 4; **see also** Commonwealth's Answer to Post Conviction Relief Act Petition, 8/15/14, at Commonwealth's Exhibit 1. This **is** the order granting the motion. It cannot be honestly asserted that the trial court took any action other than granting the motion to amend on March 18, 2011, the day the oral motion was made. Moreover, the trial court imposed a twenty-to-forty-year term of incarceration for this count, an action the trial court presumably could not have taken if it had denied the Commonwealth's motion. This issue lacks merit.

Next, Appellant asserts trial counsel's ineffective assistance in failing to challenge the photographic array as unduly suggestive. In order to obtain collateral relief, a PCRA petitioner must establish by a preponderance of the

---

[3] We also agree with Appellant that there is a dearth of case law on this issue.

evidence that his conviction or sentence resulted from one or more of the circumstances enumerated in 42 Pa.C.S. § 9543(a)(2). Instantly, Appellant asserted in his PCRA petition the existence of ineffective assistance of counsel pursuant to 42 Pa.C.S. § 9543(a)(2)(ii). To plead and prove ineffective assistance of counsel a petitioner must establish: (1) that the underlying issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act. *Commonwealth v. Pierce*, 527 A.2d 973, 975–976 (Pa. 1987); *Commonwealth v. Stewart*, 84 A.3d 701, 706 (Pa. Super. 2013) (*en banc*). "[B]ecause a PCRA petitioner must establish all the *Pierce* prongs to be entitled to relief, we are not required to analyze the elements of an ineffectiveness claim in any specific order; thus, if a claim fails under any required element, we may dismiss the claim on that basis." *Commonwealth v. Treiber*, 2015 WL 4886374, at *4, ___ A.3d ___, ___ (Pa. filed August 17, 2015); *Commonwealth v. Martin*, 5 A.3d 177, 183 (Pa. 2010). Counsel is presumed to have rendered effective assistance of counsel. *Commonwealth v. Montalvo*, 114 A.3d 401, 410 (Pa. 2015). We have explained that trial counsel cannot be deemed ineffective for failing to pursue a meritless claim. *Commonwealth v. Jones*, 912 A.2d 268, 278 (Pa. 2006); *Commonwealth v. Loner*, 836 A.2d 125, 132 (Pa. Super. 2003) (*en banc*).

The PCRA court addressed this issue as follows:

Appellant's claim is flawed in numerous ways. First, trial counsel, in fact, challenged the photo array in a pretrial motion. Counsel alleged that the police engaged in unduly suggestive behavior which caused the victim to select Appellant. (Omnibus Pretrial Motion at 14). While trial counsel may not have approached the issue of the propriety of the photo array with the exact language Appellant subsequently uses in his PCRA petition, the issue regarding the admissibility of the photo array was addressed by the Court through the pretrial motion filed by trial counsel.

In addition, the underlying claim lacks merit. The photo array was valid and not unduly suggestive. The victim was shown two photo arrays. The first did not contain Appellant. The victim made no identification. The second array contained a photo of Appellant. The victim immediately identified Appellant as the man who had shot him, and stated that he was sure about his identification of Appellant as his assailant. (TT 81-84). Furthermore, Appellant is unable to establish prejudice. Even without the photo array, the victim identified Appellant at trial. (TT 161). Telephone records and the testimony of Appellant's girlfriend established that Appellant had intended to rob the pizza delivery man. (TT 63, 74). As Appellant fails all three prongs of the IAC test, this claim is without merit.

PCRA Court Opinion, 3/9/15, at 5.

Appellant asserts that the photographic array was unduly suggestive based upon his contention that Appellant "has a perceptively narrower face than the other seven men . . . and that his hair rose higher on his head than the other men depicted in the array." Appellant's Brief at 18. This bald claim is not supported in the record. We have reviewed the photographic array and concur with the trial court that the array was valid and not unduly suggestive. Contrary to Appellant's assertion, the appearance of the six individuals is similar, and no phototograph stands out from the others. There are other men in the array with thin faces and high hairlines.

- 11 -

Our Supreme Court has instructed that a photographic identification is unduly suggestive if, under the totality of the circumstances, the identification procedure creates a substantial likelihood of misidentification. *Commonwealth v. DeJesus*, 860 A.2d 102, 112 (Pa. 2004). Moreover:

> "Photographs used in line-ups are not unduly suggestive if the suspect's picture does not stand out more than those of the others, and the people depicted all exhibit similar facial characteristics." *Commonwealth v. Fisher*, 564 Pa. 505, 769 A.2d 1116, 1126 (2001). "Each person in the array does not have to be identical in appearance." [*Commonwealth v.*] *Burton*, 770 A.2d [771,] 782 [(Pa. Super. 2001)]. The photographs in the array should all be the same size and should be shot against similar backgrounds. *Commonwealth v. Thomas*, 394 Pa. Super. 316, 575 A.2d 921 (1990).

*Commonwealth v. Kendricks*, 30 A.3d 499, 504 (Pa. Super. 2011).

In *Burton*, witnesses described the perpetrator as wearing a white T-shirt. In the *Burton* photo array, the appellant was the only individual wearing a white T-shirt. This Court concluded that the array was not unduly suggestive because the individuals all were of the same race, close in age and had short haircuts and facial hair. That is true in the instant case as well. Further, the record reveals that the victim had the opportunity to view Appellant, in close proximity, in good lighting, at the time of the crime. N.T., 3/18/11, at 150–157, 203, 213–214. The victim testified that when he observed Appellant's photograph, he "was totally sure that it was the same eyes that I had seen before." *Id*. at 180–181. Because trial counsel raised the challenge pretrial and any further objection to the photographic array

- 12 -

would not have afforded Appellant relief, counsel cannot be found ineffective for failing to pursue a meritless claim.

Third, Appellant contends that the amendment of the criminal information to charge him with attempted homicide—causing serious bodily injury, triggered his rights under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because a jury did not make a specific finding that serious bodily injury resulted from the commission of attempted homicide.

Appellant also argues that the trial court did not make a specific finding of serious bodily injury, thus rendering his sentence illegal. Appellant's Brief at 10. Our Supreme Court summarized the holding in *Apprendi* as follows:

> In *Apprendi*, the United States Supreme Court held a New Jersey hate-crime statute unconstitutional because it permitted the imposition of a twenty year sentence in place of the otherwise applicable ten year maximum if the judge determined, by a preponderance of the evidence, that the crime was perpetrated in violation of the statute. The United States Supreme Court determined that any facts, "other than the fact of a prior conviction," that subject a defendant to any additional penalty beyond a statutory maximum must be submitted to a jury and be found proved beyond a reasonable doubt.

*Commonwealth v. Gordon*, 942 A.2d 174, 175 n.1 (Pa. 2007). This holding is equally applicable to guilty pleas. *See United States v. Booker*, 543 U.S. 220, 244 (2005) ("Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt."). There is no

Sixth Amendment violation where the defendant admitted the fact in question. *Commonwealth v. Johnson*, 961 A.2d 877, 881–882 (Pa. Super. 2008).

Appellant argues that because his jury trial waiver colloquy never addressed his *Apprendi* rights, the PCRA court erred in concluding that the colloquy was valid and that trial and appellate counsel were not ineffective for failing to object and argue this point post-trial or on direct appeal. Specifically, Appellant asserts that he had a right to have the aggravating fact in support of an "enhanced sentence" found by a jury, and because he did not expressly waive that right, the general jury trial waiver did not waive his *Apprendi* rights. Appellant's Brief at 21–25.

Appellant cites *Commonwealth v. Johnson*, 910 A.2d 60 (Pa. Super. 2006), in support. That case, however is inapposite. Unlike the instant case, the defendant therein was **not** charged with attempted murder resulting in serious bodily injury and was not on notice that the Commonwealth sought either to prove that a serious bodily injury resulted from the attempted murder or to invoke the greater maximum sentence. *Id*. at 67. Instead, the trial court inferred that "serious bodily injury" resulted from the fact that the defendant was also convicted of aggravated assault.

The Commonwealth responds that in rendering its verdict, the trial court did not violate Appellant's *Apprendi* rights. It asserts that Appellant

was charged with criminal attempt (homicide), causing serious bodily injury, and he was placed on notice that the Commonwealth sought to prove that serious bodily injury resulted from the attempted murder and intended to invoke the greater maximum sentence. N.T., 3/18/11, at 133–135. The Commonwealth further maintains that the trial court, sitting as the fact finder, found beyond a reasonable doubt that serious bodily injury resulted from the attempted murder, even though the court did not include the specific phrase "serious bodily injury," where the trial court stated, "The criminal attempt against [Appellant] being clear based on the victim's testimony that after he was shot, he did ask [Appellant] to stop, but instead [Appellant] continued to fire, emptying his gun." N.T. (verdict), 3/29/11, at 2.

Serious bodily injury is not an element of attempted homicide; rather it is a separate factual finding that affects the sentencing of the defendant only if he is found guilty of that offense. *See Commonwealth v. Reid*, 867 A.2d 1280, 1284 (Pa. Super. 2002) (explaining that, under 18 Pa.C.S. § 1102(c), "whether the victim has suffered 'serious bodily injury' is a factor that goes to the length of sentence that may be imposed for attempted homicide, not to the elements of the crime itself."). Moreover, a review of the trial testimony reveals ample testimony that the victim, who was shot in the head, thigh, and the chest, suffered serious bodily injury. N.T., 3/18/11, at 156–157.

We already determined that the trial court granted the amendment of the attempted murder count. Immediately after informing Appellant that the amendment increased the statutory maximum of attempted murder, serious bodily injury, to forty years, Appellant indicated his understanding of the maximum penalty he faced for that count and the elements the Commonwealth would have to prove. N.T., 3/18/11, at 134–135. We do not find Appellant's jury-trial waiver invalid or that Appellant did not knowingly and validly waive any *Apprendi* rights. Moreover, Appellant's reliance on *Blakely v. Washington*, 542 U.S. 296 (2004), is misplaced, where *Blakely* is inapplicable to indeterminate sentencing schemes as in Pennsylvania. *See*, *e.g.*, *Commonwealth v. Rosetti*, 863 A.2d 1185, 1193 (Pa. Super. 2004) (holding that sentencing court's decision to impose maximum term sentence is not violative of *Blakely*); *Commonwealth v. Bromley*, 862 A.2d 598 (Pa. Super. 2004) (holding that *Apprendi*, does not invalidate sentence in aggravated range because it did not increase maximum available sentence). As counsel cannot be deemed ineffective for failing to pursue a meritless claim, any concomitant ineffectiveness allegation fails. *Loner*, 836 A.2d at 132.

Appellant's final issue is that the PCRA court erred in denying Appellant's motion for leave to amend his PCRA petition. Appellant asserts that he considered raising an issue "relating to the fact that Appellant had had a juvenile case that had been overseen and adjudicated by the

Honorable Jill E. Rangos, who also presided over Appellant's trial in the instant case." Appellant's Brief at 29. On August 27, 2014, the PCRA court filed notice to dismiss Appellant's amended PCRA petition pursuant to Pa.R.Crim.P. 907. Two weeks later, on September 9, 2014, PCRA counsel filed a motion for leave to amend the amended PCRA petition; counsel describes the timing of the motion as "not ideal." Appellant's Brief at 29. As noted previously, the PCRA court dismissed the PCRA petition without a hearing in an order filed on October 10, 2014; the docket does not reflect an order disposing of Appellant's motion for leave to amend. Citing Pa.R.Crim.P. 905(A),[4] Appellant asserts that "the equities militate toward" allowance of the amendment.

Our Supreme Court stated in ***Commonwealth v. Williams***, 828 A.2d 981 (Pa. 2003), as follows:

> The court retains discretion whether or not to grant a motion to . . . amend a post-conviction petition. The rule does not say that a motion to . . . amend will take effect whether or not the court chooses to participate in the decision. . . . If the court does not choose to "grant leave to amend" . . . then the motion is without effect.

***Id***. at 988.

---

[4] Pa.R.Crim.P. 905(A) provides, "The judge **may** grant leave to amend or withdraw a petition for post-conviction collateral relief at any time. Amendment shall be freely allowed to achieve substantial justice." (emphasis added).

The PCRA Court noted that "the additional meritless issue" was waived because "it was not raised at its earliest opportunity." PCRA Court Opinion, 3/9/15, at 6. The court stated that the "issue of judicial bias or conflict of interest" was not raised "at trial, post-trial, appeal, *pro se* PCRA petition, or Amended PCRA Petition." ***Id***. In the absence of any compelling argument by Appellant, we defer to the PCRA court's discretion on this issue and conclude that the PCRA court did not err.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>10/22/2015</u>

- 18 -