J-S02028-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LEE SMITH, | : | |
| | : | |
| Appellant | : | No. 861 EDA 2017 |

Appeal from the PCRA Order, January 31, 2017,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s):  CP-51-CR-0014959-2008,
CP-51-CR-0014960-2008.

BEFORE:  GANTMAN, P.J.E., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED APRIL 23, 2019**

Lee Smith appeals *pro se* from the order denying his first petition for relief pursuant to the Post Conviction Relief Act ("PCRA").  42 Pa.C.S.A. §§ 9541-9546.  Although we affirm the denial of post-conviction relief, we vacate Smith's judgment of sentence and remand for resentencing.

The pertinent facts and procedural history are as follows:  On the evening of August 21, 2008, Smith broke into the home of Sierra Richards ("Richards"), his ex-girlfriend and fired multiple gunshots into her bedroom where both she and a male friend, Gary Montgomery ("Montgomery") were sleeping.  Both victims were treated at Temple University Hospital for multiple gunshot wounds, damage to internal organs, internal bleeding, and other injuries.  On the night of the incident, Richards identified Smith as the shooter;

Montgomery gave a description of their attacker that matched Smith, and Montgomery later identified Smith in a photo array.

Police obtained an arrest warrant for Smith, and apprehended him on September 10, 2008. When apprehended, Smith gave a false name. Smith's preliminary hearing was held on November 21, 2008. At that time, Richards testified about how the incident occurred, and as to the extent of the injuries, she suffered. Montgomery, was not present, but his sister testified in regard to the nature and extent of Montgomery's injuries.

Smith's jury trial began over three years later. The first day of trial, April 17, 2012, the trial court conducted a hearing on Smith's motion *in limine* to exclude evidence of his prior abuse of Richards. Trial counsel argued that evidence of his prior bad acts was irrelevant and more prejudicial than probative. Counsel acknowledged that he would be presenting an identity defense. The trial court denied the motion, finding the prior bad acts evidence admissible.

Jury selection began the next morning. Immediately prior to jury selection, Smith informed the trial court that he "wasn't seeing eye to eye" with his attorney, but did not request a change of counsel or seek to proceed *pro se*. After a seven-day trial, the jury found Smith guilty of two counts of attempted murder, two counts of aggravated assault, burglary, and possession of an instrument of crime. On October 31, 2012, the trial court sentenced Smith to an aggregate term of 45 to 90 years of imprisonment,

including a sentence of 15 to 30 years for the attempted murder of Ms. Richards, and a sentence of 20 to 40 years for the attempted murder of Montgomery. The trial court further ruled that Smith's aggravated assault convictions merged with the attempted murder convictions for sentencing purposes.

Smith's timely appeal was dismissed for failure to file a brief, but subsequently, his direct appeal rights were reinstated *nunc pro tunc*. On appeal, Smith challenged the admissibility of evidence of prior abuse of Richards, as well as the alleged hearsay testimony of another witness. Finding no merit to either contention, this Court affirmed Smith's judgment of sentence on June 23, 2015. *Commonwealth v. Smith*, 122 A.3d 1140 (Pa. Super. 2015) (unpublished memorandum). On November 24, 2015, our Supreme Court denied Smith's petition for allowance of appeal. *Commonwealth v. Smith*, 128 A.3d 1206 (Pa. 2015).

Smith filed a timely *pro se* PCRA petition on December 31, 2015, and the PCRA court appointed counsel. On November 9, 2016, PCRA counsel filed a motion to withdraw and a "no-merit" letter pursuant to the dictates of *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988), and *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) (*en banc*), in which he averred that the claims raised by Smith in his *pro se* PCRA petition were meritless. Following an independent review of the record, the PCRA court agreed with

PCRA counsel's assessment, and, on November 17, 2016, issued Pa.R.Crim.P. 907 notice of its intention to dismiss Smith's petition without a hearing.

Smith filed a response, in which he requested the appointment of new counsel due to "an irreconcilable conflict of interest" with his PCRA counsel. Response, 12/1/16, at 1. The PCRA court found no conflict. By order entered January 31, 2017, the PCRA court dismissed Smith's PCRA petition without first holding a hearing. This timely *pro se* appeal followed. The PCRA court did not require Rule 1925 compliance.

Smith raises the following issues:

I.    Whether the PCRA court erred by finding that the appointment of PCRA counsel did not establish a conflict of interest because he shared an office with direct appeal counsel?

II.    Did the PCRA court err by dismissing Smith's PCRA petition without a hearing finding that trial counsel was not ineffective for failing to advise Smith of his right to represent himself when the issue occurred?

III.    Whether the PCRA court erred by not finding direct appeal counsel ineffective for failing to assure that the Superior Court was provided the complete record for appellate review?

IV.    Whether the Superior Court can correct Smith's illegal sentence *sua sponte* since the claim is raised in a timely PCRA petition; Smith's sentence is illegal because the jury did not render a separate finding of serious bodily injury for the crime of attempted murder, subjecting Smith to a 40-year maximum sentence in violation of **Apprendi v. New Jersey**, 530 U.S. 266 (2000)?

**See** Smith's Brief at 4.

Our scope and standard of review is well settled:

> In PCRA appeals, our scope of review is limited to the findings of the PCRA court and the evidence on the record of the PCRA court's hearing, viewed in the light most favorable to the prevailing party. Because most PCRA appeals involve questions of fact and law, we employ a mixed standard of review. We defer to the PCRA court's factual findings and credibility determinations supported by the record. In contrast, we review the PCRA court's legal conclusions *de novo.*

**Commonwealth v. Reyes-Rodriguez**, 111 A.3d 775, 779 (Pa. Super. 2015) (citations omitted).

The PCRA court has discretion to dismiss a petition without a hearing when the court is satisfied that there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by further proceedings. To obtain a reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of material fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing. **Commonwealth v. Blakeney**, 108 A.3d 739, 750 (Pa. 2014).

In his first issue, Smith asserts that because appointed PCRA counsel and Smith's direct appeal counsel shared the same office, PCRA counsel "was in conflict in executing [his] PCRA petition effectively." Smith's Brief at 8.

The PCRA court found no merit to this claim, and explained as follows:

> [Smith] alleges that PCRA counsel has an irreconcilable conflict because his attorney on direct appeal was from the

- 5 -

> same office. This claim is factually inaccurate. As noted, this Court reviewed [Smith's] "Motion in opposition to defense counsel's [**Finley**] letter". The two (2) attorneys involved do share the same suite of offices[.] Nevertheless, they are completely independent of one another. PCRA counsel . . . is a Professional Corporation for purposes of conducting the business of law. Direct appeal counsel, is not a Professional Corporation and conducts his practice of law as a sole practitioner. They maintain separate telephone and fax lines. The Professional Corporation maintains professional liability insurance whereas the solo practitioner does not. Moreover, there is nothing that [Smith] can point to in the record which would support a claim that PCRA counsel was deficient in his evaluation of Appellate counsel's performance.

PCRA Court Opinion, 5/19/17, at 5-6.

Our review of the record supports the PCRA court's conclusions. Within his brief, Smith makes the bare assertion that the two attorneys "shared communication services." Smith's Brief at 10. He then claims that "[i]t does [not] stretch credulity to presume that they also share 'water cooler conversations'' about their cases particularly when a common defendant is involved." **Id.** at 10-11. Smith's claim amounts to no more than speculation. Because he is unable to establish that a conflict of interest existed, Smith's first claim fails.[1]

---

[1] Smith did not specifically challenge PCRA counsel's ineffectiveness in his Rule 907 response, and therefore any claim regarding this lawyer has not been preserved for review. **See generally**, **Commonwealth v. Henkel**, 90 A.3d 16 (Pa. Super. 2014). His claim that PCRA counsel's failure to raise his illegality of sentence is attributable to this "conflict of interest" also fails. **See** Smith's Brief at 11. We only address claims regarding trial and direct appeal counsel.

In his next two issues, Smith challenges the effective assistance of trial and direct appeal counsel. To obtain relief under the PCRA premised on a claim that counsel was ineffective, a petitioner must establish, by a preponderance of the evidence, that counsel's ineffectiveness so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. *Commonwealth v. Johnson*, 966 A.2d 523, 532 (Pa. 2009). "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." *Id.* This requires the petitioner to demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) counsel's act or omission prejudiced the petitioner. *Id.* at 533.

As to the first prong, "[a] claim has arguable merit where the factual averments, if accurate, could establish cause for relief." *Commonwealth v. Stewart*, 84 A.3d 701, 707 (Pa. Super. 2013) (*en banc*). "Whether the facts rise to the level of arguable merit is a legal determination.'" *Id.* (citing *Commonwealth v. Saranchak*, 866 A.2d 292, 304 n.14 (Pa. 2005).

As to the second prong of this test, counsel's strategic decisions cannot be the subject of a finding of ineffectiveness if the decision to follow a particular course of action was reasonably based and was not the result of sloth or ignorance of available alternatives. *Commonwealth v. Collins*, 545 A.2d 882, 886 (Pa. 1988). Counsel's approach must be "so unreasonable that no competent lawyer would have chosen it." *Commonwealth v. Ervin*,

766 A.2d 859, 862-63 (Pa. Super. 2000) (citation omitted). A petitioner asserting ineffectiveness based upon trial strategy must demonstrate that the "alternatives not chosen offered a potential for success substantially greater than the tactics utilized." *Commonwealth v. Clark*, 626 A.2d 154, 157 (Pa. 1993). "We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he [or she] may have taken." *Stewart*, 84 A.3d at 707. A PCRA petitioner is not entitled to post-conviction relief simply because a chosen strategy was unsuccessful. *Commonwealth v. Buksa*, 655 A.2d 576, 582 (Pa. Super. 1995).

As to the third prong of the test for ineffectiveness, "[p]rejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Stewart*, 84 A.3d at 707. "A reasonable probability 'is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Commonwealth v. Rathfon*, 899 A.2d 365, 370 (Pa. Super. 2006).

Finally, when considering an ineffective assistance of counsel claim, the PCRA court "is not required to analyze these [prongs] in any particular order of priority; instead if a claim fails under any necessary [prong] of the ineffectiveness test, the court may proceed to that [prong] first." *Commonwealth v. Tharp*, 101 A.3d 736, 747 (Pa. 2014) (citations omitted). In particular, when it is clear that the petitioner has failed to meet the prejudice prong, the court may dispose of the claim on that basis alone,

without a determination of whether the first two prongs have been met. ***Commonwealth v. Travaglia***, 661 A.2d 352, 357 (Pa. 1995).

In his second issue, Smith contends that trial counsel was ineffective when counsel failed to advise him of his right to proceed *pro se* once Smith informed the trial court during jury selection that he and counsel were not "seeing eye to eye" with regard to trial strategy. This claim lacks arguable merit.

Although Smith made the following comment to the trial court, he did not seek to proceed *pro se* or otherwise invoke his right to self-representation. Such a request must be timely and unequivocal. As our Supreme Court has summarized:

> A criminal defendant's right to counsel under the Sixth Amendment includes the concomitant right to waive counsel's assistance and proceed to represent oneself at criminal proceedings. ***Faretta v. California***, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); ***Commonwealth v. Szuchon***, 506 Pa. 228, 484 A.2d 1365 (1984).
>
> ***
>
> The right to waive counsel's assistance and continue [*pro se*] is not automatic however. Rather, only timely and clear requests trigger an inquiry into whether the right is being asserted knowingly and voluntarily. ***See Faretta***, 422 U.S. at 836, 95 S.Ct. 2525 (noting that the defendant sought to represent himself by way of a clear and unequivocal declaration asserted weeks before trial). ***See also Commonwealth v. Grazier***, 552 Pa. 9, 713 A.2d 81, 82 (1998) (holding that a Rule 121 colloquy is required only in response to a timely and unequivocal invocation of the right to proceed *pro se*). Thus, the law is well established that "in order to invoke the right of self-representation, the request to proceed [*pro se*] must be made timely and not for the purposes of delay and must be clear and

unequivocal." ***Commonwealth v. Davido***, 582 Pa. 52, 868 A.2d 431, 438 (2005), *cert. denied*, 546 U.S. 1020, 126 S.Ct. 660, 163 L.Ed.2d 534 (2005).

***Commonwealth v. El***, 977 A.2d 1158, 1162-63 (Pa. 2009) (footnote omitted).

Smith's "request" was neither timely nor unequivocal. "Generally, the courts of this Commonwealth have agreed with the federal courts and those of our sister states that a request for [*pro se*] status is timely when it is asserted before 'meaningful trial proceedings' have begun." ***El***, 977 A.2d at 1163 (citations omitted). "In the context of a jury trial, the consensus is that proceedings become 'meaningful' as soon as the selection of jurors begins." ***Id.*** Here, Smith's statement of his disagreement with counsel's approach to the case occurred during jury selection.

Smith's statement to the trial court did not unequivocally establish that he wished to proceed *pro se*. Smith attempts to avoid this conclusion by arguing "counsel was obliged to advise [him] of his right self-representation and how to properly invoke it." Smith's Brief at 16. Smith cites no case authority for this proposition.[2] Thus, we will not consider it further. ***Commonwealth v. Tielsch***, 934 A.2d 81, 93 (Pa. Super. 2007) (holding that

---

[2] We note ***Miranda v. Arizona***, 384 U.S. 436 (1966), held a defendant must be informed of right to counsel. It did not require a defendant be informed of his right to self-representation. As noted, Smith cites no such authority.

undeveloped claims will not be considered on appeal). Thus, Smith second issue does not entitle him to relief.

In his third issue, Smith asserts that he "was denied meaningful appellate review because appellate counsel failed to assure that this Court was provided the complete record." Smith's Brief at 8. A review of the record reveals that the testimony of the ballistic expert from Smith's trial was never transcribed, and appellate counsel's attempt to retrieve it proved futile. According to Smith, this testimony was "an integral part of the prosecution's case against [him]." Smith's Brief at 20. Without its transcription, Smith claims that he was "unable to review and assess its reliability against the ballistics report in order to ascertain any material inconsistencies and to evaluate whether any deductions, opinions or conclusions which may have been made were contrary to [the firearms examiner's] expert qualifications and more significantly, other evidence presented in the case." *Id.* at 21.

Smith cannot establish prejudice. There is no indication in the record that appellate review of Smith's attempted murder convictions was hampered by the lack of the transcript at issue. In his appeal, Smith raised only evidentiary issues regarding prior bad acts of abuse he perpetrated upon Ms. Richards. *See Smith*, *supra*. A transcript of the firearm examiner's testimony was not needed to review the merit of these claims. Moreover, Smith does not establish how the absence of this expert testimony would

affect the overwhelming evidence that he fired the shots that injured the victims of his crimes. Thus, Smith's third issue fails.

In his final issue, Smith asserts that his sentence is illegal. According to Smith, "his sentence is illegal because the jury did not render a separate finding of serious bodily injury for the crime of attempted murder." Smith's Brief at 25. Smith argues that his forty-year maximum sentence violates *Apprendi v. New Jersey*, 530 U.S. 466 (2000). *Id.* at 26. Because issues relating to the legality of a sentence are questions of law, "our standard of review over such questions is *de novo* and our scope of review is plenary." *Commonwealth v. Barnes*, 167 A.3d 110, 116 (Pa. Super. 2017) (*en banc*).

Smith's claim involves application of 18 Pa.C.S.A. section 1102(c), which provides:

> **(c) Attempt, solicitation and conspiracy.—** Notwithstanding section 1103(1) (relating to sentence of imprisonment for felony), a person who has been convicted of attempt, solicitation or conspiracy to commit murder, murder of an unborn child or murder of a law enforcement officer where serious bodily injury results may be sentenced to a term of imprisonment which shall be fixed by court at not more than 40 years. Where serious bodily injury does not result, the person may be sentenced to a term of imprisonment which shall be fixed by court at no more than 20 years.

18 Pa.C.S.A. § 1102(c).

In *Commonwealth v Johnson*, 910 A.2d 60 (Pa. Super. 2006), this Court decided a similar case. There, the Commonwealth charged Johnson with several crimes, including attempted murder and aggravated assault

arising from Johnson's ambush and shooting of the victim who previously had testified against Johnson's brother in an unrelated murder case. During the attack in question, Johnson pointed a handgun at the victim's head and fired but missed. Johnson then pursued the victim and fired several more shots at her, striking the victim in the heel of her foot. The jury convicted Johnson of both attempted murder and aggravated assault. Thereafter, the trial court sentenced Johnson to a term of 17 ½ to 40 years for his attempted murder conviction.

Among the issues he raised on appeal, Johnson challenged his attempted murder sentence based on insufficient evidence of serious bodily injury. The trial court had rejected Johnson's claim, because it reasoned that serious bodily injury had been established when the jury found Johnson guilty of aggravated assault. This Court disagreed. Relying on the precepts of *Apprendi*, *supra*, this Court explained:

> The decision in *Apprendi*, *supra*, confirms the principle that it is within the sole province of the jury to find those facts necessary to increase the maximum terms of imprisonment for a specific charge beyond a reasonable doubt. Here, however, (1) [Johnson] was not charged with attempted murder resulting in serious bodily injury, (2) [Johnson] was not on notice that the Commonwealth sought either to prove that a serious bodily injury resulted from the attempted murder or to invoke the greater maximum sentence, and (3) the jury was never presented with, nor rendered a decision on, the question of whether a serious bodily injury resulted from the attempted murder. Thus, the jury verdict here was limited to a finding of guilt on the crime of attempted murder generally, for which the maximum sentence is twenty years.

*Johnson*, 910 A.2d at 67-68 (footnotes omitted).

In another factually similar case, ***Barnes***, ***supra***, Barnes strangled his ex-girlfriend until she lost consciousness. The jury convicted him of attempted murder, aggravated assault and related charges. At sentencing the trial court sentenced him to a 20 to 40 years of imprisonment for the attempted murder conviction, and a consecutive 2 ½ to 5 years for his aggravated assault conviction. In his original appeal to this Court, we agreed with Barnes' contention that, because both of these convictions were based on a single set of facts, *i.e.*, that Barnes choked the victim to unconsciousness, the crimes should have merged for sentencing purposes. ***Barnes***, 167 A.3d at 115. We thus remanded for resentencing and, upon remand, the trial court again imposed a 20-40-year sentence for attempted murder. ***Id.*** Barnes again appealed.

This Court, sitting *en banc*, vacated the appellant's 40 year maximum sentence for attempted murder and remanded for resentencing. After citing the ***Johnson*** decision at length, this Court stated:

> Instantly, our review of the record reveals that the docket sheet does not show that [Barnes] was charged with attempted murder resulting in serious bodily injury. Specifically, both the complaint and the information *sub judice* do not allege that [Barnes] caused serious bodily injury to the victim when he attempted to kill her. The verdict sheet in this case also is bereft of any mention of serious bodily injury with respect to the attempted murder charge. Additionally, the jury here was not instructed to render a finding on whether serious bodily injury resulted from the criminal attempt.
>
> ***

- 14 -

> As the foregoing indicates, the Commonwealth did not charge [Barnes] with attempted murder resulting in serious bodily injury. [Barnes] also was not on notice that the Commonwealth sought either to prove that a serious bodily injury resulted from the attempted murder or to invoke the greater maximum sentence. Finally, and most importantly for purposes of *Apprendi*, the jury was never presented with, nor rendered a decision on, the question of whether a serious bodily injury resulted from the attempted murder. Differently put, the issue of serious bodily injury resulting from the attempted murder was never submitted to the jury as an element of the crime or as a special interrogatory. Accordingly, consistent with *Johnson* and *Apprendi*, *supra*, we conclude that the trial court erred in sentencing [Barnes] to the maximum term of imprisonment of 40 years for attempted murder because the jury did not determine that serious bodily injury occurred relative to the attempted murder charge.

*Barnes*, 167 A.3d at 117-18.

Here, Smith relies heavily on *Johnson*, to argue that his sentence is illegal. Smith argues that he was not charged with attempted murder resulting in serious bodily injury, and that neither the criminal complaints nor criminal informations alleged that he caused serious bodily injury to the victims when he attempted to kill them. Smith's Brief at 28. In addition, he asserts that the "the verdict sheet in this case also is bereft of any mention of serious bodily injury with respect to the attempted murder charge." *Id.* Finally, Smith notes, "the jury was not instructed to render a finding on whether serious bodily injury resulted from the criminal attempt." *Id.* at 29. Thus, Smith asserts that he should have only been subject to a 20 year maximum for each of his attempted murder convictions. We are constrained to agree.

A review of the record supports Smith's assertions. The Commonwealth claims that, in a number of ways, Smith had notice of the seriousness of the victim's injuries and his counsel did not contest their severity, choosing instead to pursue a defense of mistaken identity. *See* Commonwealth's Brief at 12-16. According to the Commonwealth, "[w]here the relevant fact is not contested by defendant at trial, there is not a credible *Apprendi* challenge." *Id.* at 15 (citing *Commonwealth v. Watley*, 81 A.3d 108, 120-21 (Pa. Super. 2013) (*en banc*)). Because Smith did not challenge the severity of the victim's injuries but only who caused them, the Commonwealth likens Smith's trial strategy to a *nolo contendere* plea and/or a stipulation. *Id.* at 15-16.

The Commonwealth's reliance on *Watley* is misplaced. In *Watley*, this Court affirmed the application of a mandatory minimum sentence in a drug case, based on the possession of firearms, because, by convicting Watley of two firearm violations, the jury "did render a specific finding as to whether [Watley] possessed the handguns found the car." *Watley*, 81 A.3d at 121. We further stated that "the reason [the jury did not render a specific finding about the handguns] in conjunction with the [drug] count is that the prevailing law at the time, unlike *Johnson*, did not require such a procedure. *Id.* Thus, this Court in *Watley*, distinguished its holding from *Johnson*, *supra*.

The Commonwealth's reliance on *Commonwealth v. Reid*, 867 A.2d 1280 (Pa. Super. 2005) is also inapt. In *Reid*, Reid entered a *nolo contendere* plea to one count of attempted homicide and the Commonwealth informed him prior to its entry that he would be subject to a maximum penalty of 40

years.  **Reid**, 867 A.2d at 1282.  We found no **Apprendi** violation, because "there was no jury trial and no facts ever were placed before the jury."  **Id.** Here, a jury trial was held, but the jury was never asked to decide whether Smith caused seriously bodily injury when he attempted to kill the victims.  In addition, in both **Johnson**, 910 A.2d at 67, n.9, and **Barnes**, 167 A.3d at 118, n.6., this Court found the **Reid** decision factually and procedurally distinguishable.

Finally, in light of the above, the Commonwealth's attempts to distinguish **Johnson** and **Barnes**, or argue "harmless error" are disingenuous. **See** Commonwealth's Brief at 16-20.

In sum, while we affirm the PCRA court's order denying post-conviction relief in all other aspects, we vacate Smith's judgment of sentence and remand for resentencing.[3]

Order affirmed in part.  Judgment of sentence vacated.  Case remanded for resentencing.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/23/19

---

[3] The trial court shall appoint new counsel for Smith, or hold a hearing pursuant to **Commonwealth v. Grazier**, 718 A.2d 81 (Pa. 1998), if Smith indicates he wishes to proceed *pro se*.