J-A20042-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARIBEL OCASIO TORRES | : | |
| | : | |
| Appellant | : | No. 2296 EDA 2021 |

Appeal from the Judgment of Sentence Entered October 6, 2021
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s): CP-39-CR-0003363-2020

BEFORE:  BENDER, P.J.E., STABILE, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                 **FILED AUGUST 23, 2022**

Maribel Ocasio Torres (Torres) appeals from the judgment of sentence imposed by the Court of Common Pleas of Lehigh County (trial court) after her bench conviction of two counts of harassment, 18 Pa.C.S. § 2907(a)(1). She challenges the sufficiency of the evidence to sustain the conviction. We affirm.

We take the factual background and procedural history of this matter from the trial court's January 26, 2022 opinion and our independent review of the record.

---

[*] Retired Senior Judge assigned to the Superior Court.

**I.**

**A.**

As the result of a May 7, 2020 incident involving Rebecca Rhyne (Rebecca) and Kaitlyn Rhyne (Kaitlyn), the Commonwealth filed an Information against Torres charging her with, *inter alia*,[1] two counts of summary harassment.[2] At the bench trial, Officer Christopher D'Andrea of the Slatington Police Department, Rebecca, Kaitlyn and Torres testified.

**1.**

Officer D'Andrea testified that he was dispatched to 348 Chestnut Street for a report of a disturbance. Upon arriving at the scene and exiting his vehicle, he observed a female, later identified as Rebecca, on the ground, and two females inside of a detached garage at the location "going back and forth." (N.T. Trial, 8/04/21, at 8). Rebecca and two other males on the scene (later identified as Torres's adult sons) were yelling at each other. He identified a

---

[1] The Information also charged Torres with simple assault, but the Commonwealth dropped the charges before trial. (**See** Amended Information, 8/04/21).

[2] Section 2709 of the Crimes Code provides, in pertinent part: "A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person … strikes, shoves, kicks or otherwise subjects the other person to physical contact, or attempts or threatens to do the same[.]" 18 Pa.C.S. § 2709(a)(1). "An intent to harass may be inferred from the totality of the circumstances." **Commonwealth v. Lutes**, 793 A.2d 949, 961 (Pa. Super. 2002) (citation omitted). "[A] mere conflict of testimony does not render the verdict insufficient." **Commonwealth v. Evans**, 445 A.2d 1255, 1257 (Pa. Super. 1982) (citation omitted).

female near Rebecca as her daughter, Kaitlyn, whose three-year-old son was with her.

Officer D'Andrea testified that he observed lacerations and redness on Rebecca's face. Rebecca complained of pain so the officer radioed for emergency medical assistance. He observed that her daughter Kaitlyn was shaking, but did not appear to have any physical injury.

When the officer separated the individuals and spoke with them, he learned that Rebecca was the property manager for the owner of the property, Chris Talmadge (Talmadge), and was there to clean out the garage at Talmadge's direction, and that Torres was the tenant of the residence but not of the detached garage. He testified that Torres was "very angry" and admitted striking Rebecca, whom she initially denied knowing, before later conceding that she did, in fact, know her.

Rebecca was transported to the hospital by ambulance. Kaitlyn went to the hospital later for an evaluation.

**2.**

Rebecca testified that she helped manage the 348 Chestnut Street property on behalf of Talmadge. Her responsibilities included posting notices, picking up rent payments and cleaning up the premises.

She testified that she and Torres had shared an acrimonious exchange when she went to the property to collect rent in April 2020. On the day of the incident, she testified that she had gone to the location to clean out the

detached garage and her father, her daughter Kaitlyn and Kaitlyn's three-year-old son accompanied her.

While she was working in the garage, Torres entered and asked her why she was there. She testified that when she told Torres that she was there to clean out the garage on behalf of Talmadge, Torres responded that Talmadge had not told her. When she called Talmadge on speaker phone for clarification, Rebecca testified that Torres's adult sons approached the garage and spoke with Talmadge. Torres left the garage and was outside yelling. Talmadge instructed Rebecca to leave and when she tried to do so, Torres's sons grabbed her arms and Torres punched her in the side of the face and she fell to the ground. She testified that Torres's sons turned their attention to Kaitlyn, who was approximately ten or fifteen yards away, and repeatedly yelled at Kaitlyn and her father to leave.

**3.**

Kaitlyn testified that Torres tried to hit her in the face with a closed fist, but only knocked off her glasses. (**See id.** at 59). She maintained that Torres's swing connected with her three-year-old son, resulting in a black and blue mark for at least a week. (**See id.**). The court did not find Kaitlyn's testimony about Torres striking her son to be credible, noting that no charges had been filed related to the child. (**See** Trial Court Opinion, 1/26/22, at 10).

**4.**

Torres testified that she had a verbal agreement with Talmadge regarding the garage and she believed the garage was hers. When she saw Rebecca's family, she told them, "you guys got to get the F out. You cannot be here." (*Id.* at 34). When Rebecca did not leave, she testified that she went back into the house and got her sons, and she and the two men returned to the garage to confront Rebecca and her family, which escalated from talking to yelling. Torres denied hitting Rebecca, stating that she only pushed her out the door. On cross-examination, Torres admitted having had physical contact with Rebecca, but testified that it was a tap on the shoulder to guide her to the door.

She testified that her sons only interacted with Rebecca because they were trying to help her off the ground. However, the Commonwealth impeached her with a recording of her interview with Detective Wagner of the Slatington Police Department in which she stated that her sons said, "Yo, I'm about to just trash this bitch (Rebecca Rhyne)," and she responded, "No, don't do it … I'll take care of it. They're females." (*Id.* at 112).

Torres initially testified that she did not have any physical contact with Kaitlyn. However, on cross-examination, she admitted she, in fact did, but that it was more like a tap, and that it was "not in a serious way[.]" (*Id.* at 104). When asked if she tried to make contact with Kaitlyn, Torres responded, "Not tried, but if she's there swinging, what am I supposed to do, just stay

hit[?] I'm not Jesus. I can't give them my right cheek. It's wrong." (***Id.*** at 106). In response to the Commonwealth's question, "At some point, your body makes physical contact with Kaitlyn's[?]" she again stated, "Not in a serious way, no. It was a just a regular tap like this (indicating)." (***Id.*** at 107).

The trial court found that Torres's testimony about her interaction with Kaitlyn was not credible. (***See*** Trial Ct. Op., at 10).

**B.**

The trial court convicted Torres of the two summary harassment counts and sentenced her to three months' probation and $300.00 in fines and costs, plus certain drug and alcohol conditions.[3] Torres filed a timely post-sentence motion, which the trial court granted in part by amending the special condition that she obtain a drug and alcohol evaluation. All other aspects of the judgment of sentence remained in full force and effect. Torres timely appealed from the amended judgment of sentence[4] and filed a court-ordered statement of errors on appeal. ***See*** Pa.R.A.P. 1925(b).

---

[3] Torres completed her sentence on December 24, 2021 without any violations. (***See*** Trial Court Opinion, 11).

[4] Where the trial court amends the judgment of sentence during the period it maintains jurisdiction, the direct appeal lies from the amended judgment of sentence. ***See Commonwealth v. Garzone***, 993 A.2d 1245, 1254 n.6 (Pa. Super. 2010), *affirmed*, 34 A.3d 67 (Pa. 2012).

**II.**

Torres raises one issue for our review, "[w]hether the trial evidence sufficed to support a conviction for Harassment under 18 Pa.C.S.A. § 2709(a)(1)?" (Torres's Brief, at 4).[5] She argues that the evidence was insufficient because the testimony of Rebecca and Kaitlyn was "unbelievable and contradictory." (*Id.* at 8). Specifically, she maintains that because the court found Rebecca and Kaitlyn not credible and conflicted with her testimony

_____

[5] Our standard of review is well-settled:

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt.... When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Johnson*, 910 A.2d 60, 65 (Pa. Super. 2006), *appeal denied*, 923 A.2d 1173 (Pa. 2007) (citation omitted). Torres's issue challenges the weight of the evidence, not its sufficiency. *See Commonwealth v. Wilson*, 825 A.2d 710, 713-14 (Pa. Super. 2003) (explaining sufficiency of evidence review does not include assessment of credibility, which is more properly characterized as challenge to weight of evidence). "[A] sufficiency of the evidence challenge is directed to the adequacy of the evidence as to the elements of the offenses of which a defendant has been convicted." *Johnson*, supra at 65. On review of a trial court's ruling as to a weight of evidence claim, this Court may only determine whether the trial court abused its discretion, "not the underlying question of whether the verdict is against the weight of the evidence." *Commonwealth v. Smith*, 985 A.2d 886, 888 (Pa. 2009). An abuse of discretion is found where "the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." *Id.*

that any physical contact was only in self-defense, the evidence was insufficient. However, that was not what the trial court found.

Regarding her claim that the evidence was insufficient to prove harassment of Kaitlyn because her testimony was found not credible, the trial court found that:

> Kaitlyn Rhyne's testimony that [Torres] struck her three-year-old son was not credible. …
>
> By the same token, [Torres]'s testimony was not credible either. [Torres] expressly denied having any physical contact with Kaitlyn Rhyne. Moments later, she admitted that she did have physical contact with Kaitlyn Rhyne, although she downplayed it. Based on an evaluation of the testimony and considering the relative credibility of the witnesses, the [c]ourt determined that there was sufficient evidence that [Torres] subjected Kaitlyn Rhyne to physical contact, albeit minor physical contact based on the evidence and testimony, and that she did so with intent to harass, annoy or alarm her. [Torres] expressed that she is "not Jesus" and that if someone is swinging at her, she is not going to stand there and get hit. The consistent element between Kaitlyn Rhyne's testimony and [Torres]'s is that during the course of the altercation between them, [Torres] came into physical contact with Kaitlyn Rhyne, and the evidence supported the conclusion that it was intentional. As a result, the evidence was sufficient to sustain a conviction of Harassment with respect to Kaitlyn Rhyne.

(Trial Court Opinion, 1/26/22, at 10). While it found that Kaitlyn's testimony about Torres striking her son was not credible, the trial court did find her testimony that Torres attempted to strike her in the face and instead struck her glasses credible. Conversely, the court found all of Torres's testimony about events with Kaitlyn to be incredible due to its contradictory nature.

The trial court also found credible Rebecca's testimony that Torres and her family approached her and her family screaming obscenities, and when

Rebecca and Kaitlyn attempted to leave, Torres's adult sons grabbed Rebecca's arms and Torres punched her. (**See** N.T. Trial, at 32-33, 36). Torres then had physical contact with Kaitlyn, attempting to hit her in the face with a closed fist and knocking off her glasses. (**See id.** at 59).

We discern no abuse of discretion or error of law. "[I]t is within the province of the fact finder to determine the weight to be accorded each witness's testimony and to believe all, part, or none of the evidence introduced at trial." **Johnson**, supra at 65 (citation and brackets omitted). Given its credibility findings, the trial court did not abuse its discretion or commit an error of law in concluding there was sufficient evidence to establish that Torres subjected Kaitlyn to physical contact with the intent to harass, annoy or alarm her. **See Johnson**, **supra** at 65; 18 Pa.C.S. § 2709(a)(1). The sufficiency of the evidence argument would lack merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/23/2022