J-S46022-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                                      : PENNSYLVANIA
                                                      :
                  v.                                  :
                                                     :
                                                     :
JAMONT RICO NEAL JR. : 
                                                     :
               Appellant              : No. 300 WDA 2025

Appeal from the Judgment of Sentence Entered May 16, 2023
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0005469-2020

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                                      : PENNSYLVANIA
                                                      :
                  v.                                  :
                                                     :
                                                     :
JAMONT RICO NEAL : 
                                                     :
               Appellant              : No. 507 WDA 2025

Appeal from the Judgment of Sentence Entered May 16, 2023
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0001187-2023

BEFORE:  BOWES, J., NICHOLS, J., and KING, J.

MEMORANDUM BY NICHOLS, J.:                **FILED: May 8, 2026**

Appellant Jamont Rico Neal appeals from the judgment of sentence imposed after he was found guilty of attempted homicide, aggravated assault – attempts to cause or causes serious bodily injury, and possession of a firearm prohibited.[1]  On appeal, Appellant claims that the trial court erred by

---

[1] 18 Pa.C.S. §§ 901(a), 2702(a)(1), and 6106(a)(1), respectively.

denying his motion to suppress the victim's out of court identification and by imposing an illegal sentence based on merger as well as a violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). After review, we affirm Appellant's convictions but vacate his judgment of sentence for aggravated assault.

The trial court summarized the facts of this case as follows:

On March 12, 2020, Borough of Plum Police were dispatched to 631 Deborah Jane Drive. At 7:30 in the morning, a 911 call reported multiple shots fired and a male being shot. Officer Darryl Granata encountered the victim, Treaun McGeorge [(the victim)], in a gray Ford sedan with apparent gunshot injuries. [The victim] was alert and unable to provide Officer Granata with a description of the actor.

[The victim] testified that on the day of the shooting he and his girlfriend, Kingsley Hogan, were leaving his residence to go to work. As he turned on his car, [the victim] saw a movement from his left and he got shot. [The victim] saw the shooter running up with a firearm in his hands. [The victim] testified that he was shot by [Appellant]. [The victim] explained that he had met [Appellant] on two prior occasions, at his work and at Kingsley's house. [The victim] testified that during the encounter at Kingsley's house, [Appellant] was screaming and [the victim] displayed his firearm to protect himself and his son. [The victim] testified that he did not identify the shooter at first because he wanted to make sure his family was safe. Ultimately, [the victim] decided to provide the police with an identification. When the Detective presented him with a photo array, [the victim] testified that he immediately identified [Appellant] as the shooter.

Trial Ct. Op., 4/29/25, at 2 (citations omitted and some formatting altered).

On February 16, 2023, after a jury trial, Appellant was found guilty of attempted homicide and aggravated assault.[2]  The following day, after a bench trial, Appellant was found guilty of possession of a firearm prohibited.  On May 16, 2023, the trial court sentenced Appellant to an aggregate sentence of twenty to forty years' incarceration.  Specifically, Appellant was sentenced to twenty to forty years' incarceration for attempted homicide, eight to sixteen years' incarceration for aggravated assault, and six to twelve years' incarceration for possession of a firearm prohibited.  The trial court imposed the sentences for aggravated assault and possession of a firearm prohibited concurrent to Appellant's sentence for attempted homicide.

On May 24, 2023, Appellant sought leave from the trial court to file post-sentence motions upon receipt of the trial transcripts.  The trial court granted Appellant's motion and directed Appellant to file post-sentence motions within thirty days of receipt of the transcripts.  Thereafter, Appellant filed post-sentence motions on July 28, 2023, which the trial court denied on August 1, 2023.  Appellant filed a timely notice of appeal on August 10, 2023.

On April 22, 2024, this Court dismissed Appellant's appeal for failure to file a brief.  **See** Order, 922 WDA 2023, 4/22/24.  On June 28, 2024, Appellant filed a petition pursuant to the Post-Conviction Relief Act[3] seeking the reinstatement of his appellate rights *nunc pro tunc*.  On December 2, 2024,

---

[2] Appellant was found not guilty of carrying a firearm without a license.  **See** Juror Forms, 2/16/23, at 2 (unpaginated).

[3] 42 Pa.C.S. §§ 9541-9546.

- 3 -

the trial court granted Appellant's PCRA petition and reinstated his appellate rights *nunc pro tunc*.

Appellant filed a timely notice of appeal. Both the trial court and Appellant complied with Pa.R.A.P. 1925.

Appellant raises three issues on appeal, which we have reordered as follows:

1. Whether the trial court abused its discretion and/or erred as a matter of law in denying the motion to suppress the photo array that identified Appellant?

2. Whether Appellant's sentence for attempted homicide was illegal as the instruction for attempted homicide and the jury slip demonstrate that the jury did not find the element of serious bodily injury in violation of **Apprendi v. New Jersey**?

3. Whether Appellant's sentence for aggravated assault was illegal since a sentence of aggravated assault must merge with attempted homicide?

Appellant's Brief at 5 (some formatting altered).

Appellant's first claim is that the trial court erred by denying his motion to suppress the victim's out of court identification of Appellant as the shooter based on a photo array. **See id.** at 14-17. Appellant claims that the photo array was "unreliable and unduly suggestive." **Id.** at 17. Specifically, Appellant argues that the photo array was unreliable because the victim was initially unable to identify the shooter, the photo array was conducted over a month after the shooting, the victim's girlfriend may have influenced the identification, and because police did not conduct a double-blind photo array. **See id.** at 15-17.

- 4 -

This Court has previously addressed the standards of review for a claim challenging the denial of a motion to suppress an out of court identification as follows:

> When reviewing the propriety of a suppression order, an appellate court is required to determine whether the record supports the suppression court's factual findings and whether the inferences and legal conclusions drawn by the suppression court from those findings are appropriate. Where the Commonwealth prevailed in the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. However, where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's conclusions of law are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts.
>
> A court must assess the reliability of an out-of-court identification by examining the totality of the circumstances. A pre-trial identification will not be suppressed as violative of due process unless the facts demonstrate that the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. The reliability of an out-of-court identification is determined by considering the totality of the circumstances, including, *inter alia*, the following specific factors: (1) the witness' ability to observe the criminal act; (2) the accuracy of the photo array selection and other descriptions; (3) the lapse of time between the act and any line-up; and (4) any failure to identify the defendant on prior occasions. The purpose of a suppression order regarding exclusion of identification evidence is to prevent improper police action. Thus, where a defendant does not show that improper police conduct resulted in a suggestive identification, suppression is not warranted.

*Commonwealth v. Russell*, 209 A.3d 419, 430-31 (Pa. Super. 2019) (citations omitted and formatting altered).

Here, the suppression court explained its decision to denial suppression as follows:

> Credible testimony presented by the Commonwealth established that this was a valid identification. Although the victim had made no prior identifications of the suspect, Detective Greg Renko testified, "[t]hrough other means of the investigation, we learned of [Appellant] and his involvement which led to us creating the photo array." [N.T. Suppression Hr'g, 2/2/23,] at 17-18. Detective Renko described entering character traits of the suspect into the JNET C pin program to find seven photographs. [*Id.*] at 9. Using a folder shuffle method, Detective Renko placed the photographs into individual folders. [*Id.*] at 12. On April 16, 2020, approximately one month after the shooting, the detective took the photo array to West Penn Hospital to show [the victim]. [*Id.*] at 8. After providing [the victim] with appropriate instructions, he selected the photograph of [Appellant]. [*Id.*] at 13.
>
> Additionally, th[is] court finds that there is no evidence that the identification was tainted by its timing. The record reflects that Detective Renko presented [the victim] with the photo array approximately one month after the shooting. [*Id.*] at 8. There is no evidence to establish that the identification was influenced by [the victim's girlfriend]. Even if [the victim] spoke to [his girlfriend] before he was shown the pictures, this would not explain law enforcement placing a photo of [Appellant] in the array. In conclusion, based on Detective Renko's credible testimony, the array was properly developed and presented to the victim. The denial of the motion to suppress was proper.

Trial Ct. Op., 4/29/25, at 4 (some formatting altered).

After review of the record, we conclude that the trial court's findings of facts and conclusions of law are supported by the record and free of legal error. *See Russell*, 209 A.3d at 430-31. The record reflects that the delay

in showing the victim the photo array was the result of the natural development of the investigation. **See** N.T. Suppression Hr'g, 2/2/23, at 17-18.

Additionally, as the trial court noted, Appellant has provided no evidence that the victim's girlfriend influenced the victim's identification of Appellant as the shooter. The victim's girlfriend was not present in the room when the victim identified Appellant as the shooter. **See id.** at 19, 21. Detective Renko testified that he was unaware of any "outside sources" that may have influenced the victim's identification. **See id.** at 18. Further, Detective Renko testified that Appellant's presence in the photo array resulted from continued investigation of the shooting and that, during police interviews with the victim's girlfriend, police never identified Appellant as a person of interest. **See id.** at 17-20.

Further, the record reflects that the victim's previous statements regarding being unable to identify the shooter occurred on the night of the shooting and the day after the shooting. **See id.** at 16-17. Detective Renko testified that it is common to show a photo array to a victim even after the victim states they were unable to identify the suspect because of the potential influence of the traumatic event and due to hesitation from victims in coming forward because of fear or nervousness. **See id.** at 18.[4]

_____

[4] While we are cognizant that our scope of review is limited to the record from the suppression hearing, **see Commonwealth v. Brinkley**, 331 A.3d 85, 91 *(Footnote Continued Next Page)*

Finally, as to Appellant's argument concerning the police's failure to utilize a double-blind photo array method, while Detective Renko testified that the double-blind method is "the most preferred method," he stated that it is not always used especially where, as here, other detectives were unavailable. *See id.* at 20. Ultimately, Detective Renko testified that, due to the procedure he used to create the array, he did not know which folder Appellant's photo was in until the victim opened it and he did not tell the victim that Appellant was in the photo array. *See id.* at 14. Because Appellant does not explain how the lack of a double-blind photo array resulted in a 'very substantial' likelihood of irreparable misidentification, we find this argument unavailing. *See Russell*, 209 A.3d at 430-31; *see also Commonwealth v. Connelly*, 1004 MDA 2022, 2023 WL 5274028, at *4-5 (Pa. Super. filed Aug. 16, 2023) (unpublished mem.) (finding a claim that police should have utilized a double blind photo array procedure waived but recognizing that, had the issue not been waived, the defendant was not entitled to relief because he was required to show that "the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification" (citation omitted)).[5]

_____

(Pa. Super. 2025), we note that the victim testified at trial that he did not come forward with the identity of the shooter sooner because he was worried about the safety of his family. *See* N.T., 2/15-17/23, at 62-63.

[5] *See* Pa.R.A.P. 126(b) (stating this Court may rely on unpublished decisions of this Court filed after May 1, 2019, for their persuasive value).

Because the totality of the circumstances established that there was no improper police conduct and that the identification procedure was not impermissibly suggestive, we conclude that the trial court's findings of fact and conclusions of law are supported by the record and free of legal error. *See Russell*, 209 A.3d at 430-31. Accordingly, no relief is due.

Appellant's second claim is that the trial court erred by imposing an illegal sentence of twenty to forty years' incarceration for attempted homicide in violation of *Apprendi*.[6] Appellant's Brief at 22-35. Specifically, Appellant claims that the trial court violated *Apprendi* because "the jury never found beyond a reasonable doubt that serious bodily injury resulted from the attempted homicide."[7] *Id.* at 22.

---

[6] We note that Appellant concedes that this Court is bound to follow the precedential decision in *Commonwealth v. Cruz*, 320 A.3d 1257 (Pa. Super. 2024) (*en banc*), and states that he "takes exception to this ruling for the sole purpose[] of appealing such a ruling to our Supreme Court." Appellant's Brief at 22.

[7] Appellant also claims that he was not put on notice that the Commonwealth was seeking the sentencing enhancement under 18 Pa.C.S. § 1102(c) in violation of *Commonwealth v. King*, 234 A.3d 549 (Pa. 2020). Appellant's Brief at 28. However, the record belies this claim. On June 24, 2021, the Commonwealth filed a motion to amend the criminal information that specifically sought to amend the criminal information to reflect that the victim suffered serious bodily injury as a result of the attempted murder. *See* Motion to Amend, 6/24/21, at 2 (unpaginated). The trial court granted this motion on January 5, 2023. *See* Trial Ct. Order, 1/5/23. The amended criminal information alleged that Appellant committed attempted murder by shooting the victim, "resulting in serious bodily injury," and included a citation to the sentencing enhancement under 18 Pa.C.S. § 1102(c). *See* Motion to Amend, 6/24/21, at Exhibit 1; *see also King*, 234 A.3d at 562 (stating that "when the Commonwealth intends to seek an enhanced sentence for attempted
*(Footnote Continued Next Page)*

The United States Supreme Court has held that any fact, other than a prior conviction, that enhances the penalty for a crime beyond the statutory maximum must be submitted to a jury, unless the defendant admits to that fact. **See Blakely v. Washington**, 542 U.S. 296, 303-04 (2004); **Apprendi**, 530 U.S. at 490.

Under the crimes code, a defendant who is convicted of attempted murder that resulted in serious bodily injury can be sentenced to a statutory maximum of 40 years' imprisonment, otherwise the statutory maximum sentence is 20 years' imprisonment. 18 Pa.C.S. § 1102(c); **see also Commonwealth v. Barnes**, 167 A.3d 110, 117 (Pa. Super. 2017) *(en banc)*, *abrogated on other grounds by* **Cruz**, 320 A.3d at 1276.[8]

_____

murder resulting in serious bodily injury under Section 1102(c), the Commonwealth must include a citation to the statutory provision as well as its language in the charging documents").

In any event, we note that the criminal complaint stated that Appellant caused or attempted to cause serious bodily injury to the victim for the aggravated assault charge. **See** Criminal Complaint, 4/17/20, at 2. Further, the affidavit of probable cause attached to the criminal complaint stated that victim was paralyzed as a result of suffering six gunshot wounds in the murder attempt. **See** Affidavit of Probable Cause, 4/17/20, at 3. Accordingly, even if Appellant was not provided formal notice in the charging document, any error was harmless. **See King**, 234 A.3d at 510 (explaining that even when a defendant does not receive formal notice that the Commonwealth is seeking the sentencing enhancement for attempted murder the error is harmless where the defendant receives *de facto* notice that the Commonwealth is seeking to prove serious bodily injury for the enhancement).

[8] The **Cruz** Court abrogated a prior line of cases, including **Barnes** and **Commonwealth v. Johnson**, 910 A.2d 60, 67-68 (Pa. Super. 2006) (per curiam), to the extent that they "suggested that a sentence imposed in

*(Footnote Continued Next Page)*

However, this Court has held that the harmless error doctrine applies to **Apprendi** violations. **Cruz**, 320 A.3d at 1274-76. Specifically, the **Cruz** Court held that the failure to submit the question of whether the defendant caused the victim serious bodily injury with respect to the attempted murder charged was a harmless error in light of the "overwhelming and uncontroverted" evidence and because the jury also convicted the defendant of "aggravated assault, causing serious bodily injury." **Id.**

Here, the trial court addressed Appellant's claim as follows:

[Appellant] contends that the jury instruction and jury slip were deficient, resulting in a violation of [**Apprendi**]. Th[is] court finds that [Appellant] is interjecting an element that is not part of this offense.

The Superior Court has held the elements of attempted homicide are as follows:

Criminal attempt is separately codified at 18 Pa.C.S. § 901, which states, "[a] person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S.[] § 901(a).

Criminal attempt is a specific intent crime. Thus, attempted murder requires a specific intent to kill. **Commonwealth v. Robertson**, 875 A.2d 1200, 1207 (Pa. Super. 2005). ("For the Commonwealth to prevail in conviction of criminal attempt to commit homicide, it must prove beyond a reasonable doubt that the accused with a specific intent to kill took a substantial step towards that goal."). **Commonwealth v. Palmer**, 192 A.3d 85, 88 (Pa. Super. 2018) (brackets omitted). "Specific intent to kill can be

_____

violation of **Apprendi** or its progeny can never be harmless and is *per se* illegal." **Cruz**, 320 A.3d at 1276. As discussed below, the **Cruz** Court held that the harmless error doctrine applied to **Apprendi** violations. **See id.** at 1274-76.

established through circumstantial evidence, such as the use of a deadly weapon on a vital part of the victim's body." ***Commonwealth v. Montalvo***, 956 A.2d 926, 932 (Pa. 2008).

***Commonwealth v. Sheets***, 302 A.3d 145, 151 (Pa. Super. 2023).

Instantly, [Appellant] faults the court for failing to instruct the jury regarding the element of "serious bodily injury." The transcript shows that the court gave the panel the standard instruction. This instruction does not identify serious bodily injury as an element of this offense.

Similarly, Superior Court case authority does not require a showing of serious bodily injury for a conviction of attempted homicide. The court concludes that there was no error in the instruction and jury slip because serious bodily injury is not an element of the offense. Accordingly, [Appellant's] ***Apprendi*** claim fails.

Trial Ct. Op., 4/29/25, at 5-6 (some formatting altered).

After our review of the record, we affirm the trial court's judgment of sentence for attempted murder, albeit on different grounds. ***See Commonwealth v. Williams***, 125 A.3d 425, 433 n.8 (Pa. Super. 2015) (stating that an appellate court "may affirm [a trial court's decision] on any legal basis supported by the certified record" (citation omitted)).

Here, Appellant was sentenced to a maximum sentence of forty years' incarceration for attempted murder. ***See*** Sentencing Order, 5/16/23. However, in order to impose that sentence, the jury was required to make a finding that the victim suffered serious bodily injury for the attempted murder charge. ***See*** 18 Pa.C.S. § 1102(c); ***see also Barnes***, 167 A.3d at 117. As the trial court concedes, the jury was not instructed that they needed to make

a finding regarding causing serious bodily injury for the attempted murder charge and the verdict sheet did not contain an interrogatory regarding such a finding. *See* N.T., 2/15-17/23, at 322-26; Juror Forms, 2/16/23. Ultimately, the jury never made a finding that Appellant caused serious bodily injury in relation to attempted murder. Because the jury did not make such a finding, the trial court committed an *Apprendi* violation when it sentenced Appellant to forty years pursuant to the sentencing enhancement in 18 Pa.C.S. § 1102(c). *See Barnes*, 167 A.3d at 117-19.

However, as noted previously, an *Apprendi* violation does not result in an illegal sentence where the error is harmless. *See Cruz*, 320 A.3d at 1274-76. Here, as in *Cruz*, we find that the trial court's violation of *Apprendi* resulted in harmless error because there was uncontroverted evidence of serious bodily injury and the jury also convicted Appellant of aggravated assault – causing serious bodily injury. *See id.*

At trial, the Commonwealth presented the testimony of the victim who explained that he suffered injuries resulting from the shooting that included a spinal cord injury that left him unable to walk and with daily neuropathic pain. *See* N.T., 2/15-17/23, at 69-72. Appellant did not contest the victim's injuries and, instead, argued that he was not the person responsible for the shooting. *See id.* at 294-302 (reflecting that Appellant's defense was that he was not the individual who committed the shooting). Further, the jury found Appellant guilty of "aggravated assault – serious bodily injury" for the same conduct underlying the attempted murder charge. Juror Forms, 2/16/23, at 2

- 13 -

(unpaginated); *see also* N.T., 2/15-17/23, at 341. Since there was uncontroverted testimony regarding the victim's serious bodily injury and the jury convicted Appellant of aggravated assault – serious bodily injury for the same conduct, we conclude that the trial court's violation of *Apprendi* resulted in harmless error. *See Cruz*, 320 A.3d at 1274-76. Accordingly, no relief is due.

Appellant next argues that the trial court erred by imposing an illegal sentence for aggravated assault because it should have merged with attempted homicide for sentencing purposes. Appellant's Brief at 18-21.

"A claim that crimes should have merged for sentencing purposes raises a challenge to the legality of the sentence; therefore, our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Dortch*, 343 A.3d 298, 308 (Pa. Super. 2025) (citation omitted and some formatting altered).

Section 9765 of the Sentencing Code provides as follows:

No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S. § 9765.

It is well-established that aggravated assault under 18 Pa.C.S. § 2702(a)(1) merges with attempted murder. *See Commonwealth v. Anderson*, 650 A.2d 20, 24 (Pa. 1994) (stating that "[i]t is clear that the

offense of aggravated assault is necessarily included within the offense of attempted murder; every element of aggravated assault is subsumed in the elements of attempted murder").

Here, the trial court sentenced Appellant to twenty to forty years incarceration for attempted murder as well as a concurrent term of eight to sixteen years' incarceration for aggravated assault. **See** Sentencing Order, 5/16/23. As the trial court correctly concedes, those charges merge for sentencing purposes. **See** Trial Ct. Op., 4/29/25, at 6-7; **Anderson**, 650 A.2d at 24. Therefore, we are constrained to vacate the sentence of eight to sixteen years' incarceration for aggravated assault. **See id.**; **Dortch**, 343 A.3d at 308-09.

Although we vacate Appellant's sentence for aggravated assault, we do not disturb Appellant's conviction for this offense. **See Commonwealth v. Tucker**, 143 A.3d 955, 960 (Pa. Super. 2016) (affirming the defendant's conviction but concluding that the illegal sentence must be vacated). Further, we affirm Appellant's judgment of sentence in all other respects. Moreover, we conclude that we need not remand for re-sentencing in this case because our decision does not upset the trial court's sentencing scheme. **See Commonwealth v. Thur**, 906 A.2d 552, 569-70 (Pa. Super. 2006) (explaining that an appellate court need not remand for resentencing when it can vacate an illegal sentence without upsetting trial court's overall sentencing scheme).

Convictions affirmed. Judgment of sentence affirmed in part, and vacated, in part. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 5/8/2026